# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREEDOM WATCH, INC., <br><br> Plaintiff, <br> v. <br><br> MUELLER, ET AL., <br><br> Defendant. | Civil Action No. 1:18-cv-00088 <br> (EGS) |

### PLAINTIFF'S RESPONSE TO THE COURT'S MINUTE ORDER OF NOVEMBER 26, 2018 CONCERNING THE ALLOWANCE OF DISCOVERY

**I.      INTRODUCTION**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to secure the production of certain agency records. Plaintiff, Freedom Watch, Inc. ("Freedom Watch") submitted a FOIA request to Special Counsel Robert Mueller, Chief of Initial Request Staff for the U.S. Department of Justice Laurie Day, the U.S. Department of Justice, Chief of FOIA's Criminal Division for the U.S. Department of Justice Amanda Marchand Jones, and the Federal Bureau of Investigation ("FBI"), hereinafter referred to as ("Defendants") on January 2, 2018. Defendants have produced minimal responsive documents while also withholding and redacting records. On January 12, 2018, Plaintiff filed suit against Defendants for violating FOIA laws. Plaintiff, through undersigned counsel and pursuant to the Court's Order of November 26, 2018, respectfully moves this Court for an order permitting discovery. If the Court rules that discovery is not necessary at this time – which it respectfully should not – Plaintiff then requests that the Court review Defendants' limited production *in camera*.

## II. PLAINTIFF'S FOIA REQUEST

On January 2, 2018, by Facsimile, Federal Express, and U.S. Mail, Plaintiff Freedom Watch served Defendants a specific and well-defined FOIA request asking for the following:

> documents and records . . . that refer or relate with regard to communications to and from the media . . . concerning the activities of Special Counsel Robert Mueller and/or his staff as well as the Federal Bureau of Investigation, concerning the investigation of alleged Russian collusion and related matters concerning the Trump Presidential Campaign and the Trump Transition Team . . .

## III. ARGUMENT

### A. Discovery

This litigation presents a rare case about Special Counsel Robert Mueller's leaks to the media to bolster the "legitimacy" of his criminal investigation. These apparent leaks involve details about his investigation designed to influence public opinion for tactical motivations. The FOIA production thus far shows conflicting public reports and likely material omissions to the Court. This raises serious questions about Defendants' compliance with FOIA. Discovery is necessary to answer these questions.

Congress enacted the FOIA to promote transparency across the government. *See* 5 U.S.C. § 552; *Quick v. U.S. Dep't of Commerce*, 775 F. Supp. 2d 174, 179 (D.D.C. 2011). The U.S. Supreme Court has explained that the FOIA is "a means for citizens to know 'what the government is up to.' This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records & Admin. v. Favish*, 541 U.S. 157, 171-72 (2004) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also SEC v. Am. Int'l Grp.*, No. 12-5141. 2013 WL375650, at *1 (D.C. Cir. Feb. 1, 2013) ("The public has a

2

fundamental interest in 'keeping a watchful eye on the workings of public agencies.'") (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 905 (D.C. Cir. 1996)). As a result, the FOIA requires federal agencies to release all records responsive to a request for production. *See* 5 U.S.C. § 552(a)(3)(4). Federal courts are authorized under the FOIA "to enjoin the agency and to order the production of any agency records improperly withheld from the complainant." *Id*. at § 552(a)(4)(B).

Plaintiff Freedom Watch is entitled to all responsive documents unless the withheld information falls within one of nine exemptions enacted by Congress. *See* 5 U.S.C. § 552(b). "These exemptions are made exclusive, and must be narrowly construed." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1262 (2011) (emphasis added); *see also Pub. Citizen, Inc. v. Office of Mgnt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010) ("FOIA allows agencies to withhold only those documents that fall under one of nine specific exemptions, which are construed narrowly in keeping with FOIA's presumption in favor of disclosure."). As occurred here, when a FOIA requester properly files a civil action against an agency, the agency has the burden of demonstrating that its response to the plaintiff's FOIA request was appropriate. *See, e.g., Reporters Comm*, 489 U.S. at 755. (citing 5 U.S.C. § 552(a)(4)(B)). When an agency's response to a FOIA request is to withhold responsive records, either in whole or part, the agency "bears the burden of proving the applicability of claimed exemptions." *ACLU v. U.S Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011).

It is black letter law that discovery in FOIA cases is permissible. *See, e.g, Landmark Legal Found. v. Envtl. Prot. Agency*, 959 F. Supp. 2d 175 (D.D.C. 2013) (permitting discovery to address the adequacy of the search); *Citizens for Responsibility and Ethics in Washington v. Office of Admin.*, No. 07-964 (D.D.C. Feb. 11, 2008) (order authorizing jurisdictional discovery in FOIA case); *Public Citizen Health Research Group v. Food & Drug Admin.*, 997 F. Supp. 56, 72 (D.D.C.

3

1998) (permitting discovery for "investigating the scope of the agency search for responsive documents, the agency's indexing procedures, and the like").

The unusual circumstances of this case plainly warrant discovery. In order for this case to be fairly adjudicated, Plaintiff Freedom Watch and this Court require a clear and thorough understanding of what records Defendants are withholding, how and why the records produced are redacted, and what efforts Defendants have or have not undertaken to provide Plaintiff Freedom Watch with what it is entitled to by FOIA law. The public interest also demands clear, thorough answers to these important questions. Even a cursory review of the produced documents show that Peter Carr, spokesperson for the Office of Special Counsel, engaged in secret meetings (with media representatives who would e-mail him) at Paul, a French café at 801 Pennsylvania Avenue, where it is believed and highly likely that Mr. Carr leaked grand jury and other confidential information to the media, avoiding any written record of the leaks. *See* Exhibit 1, as just one example. Why did Mr. Carr request to meet media at a café instead of in his office, which would be the standard procedure? The "chumminess" of the e-mails (sometimes back and forth *several times* between Mr. Carr and the same media representatives) leads to only one conclusion: the Office of Special Counsel deliberately leaked information to the media in an effort to destroy potentially innocent people and gain recognition for its indictments,[1] yet Defendants have produced no records in this regard.

This honorable Court allowed for discovery in a similar case, relating to former Secretary of State Hillary Clinton's private email server. During the stage of litigation, that case presented a

---

[1] Indeed, the U.S. Supreme Court issued rulings concerning the necessity of privacy and discretion in grand jury proceedings. The reasons to keep grand jury proceedings private include: " . . . to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends fro importuning the grand jurors . . . to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] to protect innocent accused who is exonerated from disclosure of the fact that he [or she] has been under investigation, and from the expense of standing trial where there was no probability of guilt." *United States v. Procter*, 356 U.S. 677, n. 6 (1958).

narrow legal question: whether U.S. Department of State conducted search reasonably calculated to uncover all relevant documents in good faith for Plaintiff Judicial Watch, Inc.? ("Judicial Watch"). *Judicial Watch, Inc., v. U.S. Department of State*, 13-cv-1363 (May 4, 2016) [Dkt. #73]. Although this Court issued a minute Order stating that it "is not inclined to agree with plaintiff that good cause exists for allowing discovery regarding the adequacy of the defendants' search[,]" [*See* Minute Order of November 26, 2018], the Court instructs Plaintiff Freedom Watch to discuss the propriety of allowing discovery. Indeed, this Court knows there are many reasons to allow discovery in FOIA cases and the adequacy of a search is just one of those reasons. In *Judicial Watch*, the Court ruled that the plaintiff there "raise[d] significant questions in its Motion for Discovery about whether the State Department processed documents in good faith . . ." *Judicial Watch, Inc.*, 13-cv-1363 (May 4, 2016) [Dkt. #73, p. 9]. According to this Court, even if a legitimate *question* arises as to whether a defendant acted in good faith, discovery is warranted.

Indeed, discovery should be permitted when a plaintiff raises a sufficient question as to an agency's good faith in processing documents. *See, e.g., Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 05-cv-02078, 2006 WL 1518964 (D.D.C. June 1, 2006) (permitting discovery in a FOIA action where the government engaged in extreme delay); *see also Landmark Legal Foundation v. E.P.A.*, 959 F. Supp. 2d 175 (D.D.C. 2013) (ordering discovery in a FOIA action on the question of whether senior administrators used personal emails for official business and whether the EPA excluded key officials from their initial search); *Landmark Legal Foundation v. E.P.A.*, 82 F. Supp. 3d 211, 220 (D.D.C. 2015) (noting that the behavior of the EPA following Landmarks August 2012 FOIA request raised a "reasonable suspicion" of wrongdoing, entitling Landmark discovery on the possibility that "EPA may have purposefully attempted to skirt disclosure under [] FOIA.").

Here, just recently, on September 12, 2018, Defendants, as Plaintiff could have predicted, informed Plaintiff and the Court that they – at the last hour when production was to begin – "[conveniently] learned of a technical issue that may have resulted in incomplete searches of records held by custodians at the Special Counsel's Office . . ." [Dkt. #22]. Defendants concluded that while the Justice Management Division was undertaking "prompt" remediation efforts, it could not estimate when it would complete its data consolidation and remedial search for this case. *Id*. Plaintiff submits that this so-called and likely contrived at the eleventh hour "technical glitch" must be investigated by the Court and Plaintiff, through discovery or alternatively *in camera* review, in order to ascertain whether all responsive documents have been searched, inspected, and turned over, as well as redactions and exemptions properly, rather than improperly, claimed. This case is at the pinnacle of national importance as it deals with the integrity of our justice system. The American public has a right to full disclosure. Any delay by Defendants should be seen for what it is: an attempt to shield themselves from the public seeing evidence of their routinely leaking grand jury information to the media and other disclosures for their own tactical motivations.

Moreover, Defendants also intentionally produced the documents to Plaintiff in a non-searchable form; that is, instead of a document text production that is searchable, Defendants provided Plaintiff with low quality picture images of each page of the production. While suitable for reading, when a reader "zooms in," the page is blurry without any optical character recognition. Any search tools using Adobe Acrobat or other computer software is useless as the picture of documents instead of a production of text severely hampers any search process. This must be corrected.

    **B.**    ***In Camera* Review**

In addition to the discovery that is warranted in this case, this Court has "broad discretion" to decide whether *in camera* review is also necessary to determine whether the government

agencies have met their burden regarding the production. *Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008). Congress's directives and the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") regulate when a district court may rely on *in camera* review. The D.C. Circuit has recognized that "Congress provided district courts the option to conduct in camera review under FOIA," and the decision whether to do so is left to "the broad discretion of the trial judge." *ACLU*, 628 F.3d at 626. Indeed, the D.C. Circuit has clarified that "[a] judge has discretion to order inspection on the basis of an uneasiness, on a doubt that he wants satisfied before he takes responsibility for a de novo determination" and that "[t]he ultimate criterion" is "[w]hether the district judge believes that in camera inspection is needed in order to make a responsible de novo determination on the claims of exemption. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (rejecting a challenge that a court too hastily resorted to *in camera* review).

Thorough judicial review by this Court is particularly appropriate in light of Plaintiff Freedom Watch's information disadvantage, peculiar to the context of FOIA litigation:

> [I]t is anomalous but obviously inevitable that the party with the greatest interest in obtaining disclosure is at a loss to argue with desirable legal precision for the revelation of the concealed information. Obviously the party seeking disclosure cannot know the precise contents of the documents sought; secret information is, by definition, unknown to the party seeking disclosure. . . . In a very real sense, only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing information . . .

*Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973); *see also Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994) ("[T]he plaintiff is handicapped in this endeavor by the fact that only the agency truly knows the content of the withheld material. Except in cases in which the court takes the entire set of responsive documents *in camera*, even the court does not know.").[2]

---

[2]   The D.C. Circuit has encouraged *in camera* review of FOIA documents in a variety of circumstances. The Circuit has long held in camera review to be appropriate where "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims" or "evidence of agency bad faith is before the court." *Lam Lek Chong v. U.S. Drug Enforcement Admin.*, 929 F.2d 729, 735 (D.C. Cir. 1991); *see also, e.g., Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980). The D.C. Circuit made clear, however, that these are not

7

This case warrants discovery but in the alternative, and at a minimum, it warrants *in camera* review. There is a "greater call for in camera inspection" in "cases that involve a strong public interest in disclosure." *Allen*, 636 F.2d at 1299. The public interest in the contents of the withheld and redacted documents is exceptionally high. The request is extremely urgent, as the investigation by Special Counsel Robert Mueller is currently ongoing, and there are new leaks emerging from his office nearly every day. This harms the reputation and livelihoods of a number of people that are under investigation and, as importantly, as well as the reputation, integrity and the public's trust of the justice system.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Freedom Watch respectfully asks this Court to grant it discovery in order to uncover the inadequacy of Defendants production which Defendants are apparently attempting to thwart.

Additionally, "[a] judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a doubt that he wants satisfied . . ." *Spirko*, 147 F.3d at 996. Plaintiff Freedom Watch submits that there is even more than substantial doubt that exists here, and urges the Court to review the withheld and redacted materials *in camera*. Plaintiff's FOIA request and the information sought are serious matters that warrant the commitment of resources of the Court to investigate Defendants' production of documents. If the Court, which undersigned counsel admires for its independence and integrity, believes it would be burdened, then it should appoint a special master to review the production *in camera*.

---

the only circumstances under which in camera review is justified. *See, e.g., Spirko*, 147 F.3d at 996 ("[i]n camera inspection does not depend on a finding or even tentative finding of bad faith") (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978)). "The ultimate criterion is simply this: Whether the district judge believes that in camera inspection is needed in order to make a responsible de novo determination on the claims of exemption." *Spirko*, 147 F.3d at 996 (quoting *Ray*, 587 F.2d at 1195); *see also Carter v. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987).

**Dated**: December 4, 2018

                                              Respectfully Submitted,

                                              /s/ *Larry Klayman*
                                              Larry Klayman, Esq.
                                              D.C. Bar No. 334581
                                              Freedom Watch, Inc.
                                              2020 Pennsylvania Ave. NW, Suite 345
                                              Washington, DC 20006
                                              Tel: (310) 595-0800
                                              Email: leklayman@gmail.com

                                              *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 4th day of December 2018, a true and correct copy of the foregoing was filed and served via CM/ECF to all counsel and parties of record.

                                              /s/ *Larry Klayman*