**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FREEDOM WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civ. Action No. 1:18-cv-00088 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT S. MUELLER III, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 1

ARGUMENT .............................................................................................................. 5

I.      STANDARD OF REVIEW .................................................................... 5

II.     DEFENDANTS CONDUCTED REASONABLE SEARCHES....................................... 6

       A.    OIP's Search for Responsive Records. .................................................. 8

       B.    FBI's Search for Responsive Records. ................................................. 10

       C.    Defendants' Searches Were More Than Adequate. ............................... 11

III.    DEFENDANTS PROPERLY WITHHELD INFORMATION UNDER EXEMPTIONS 5, 6, AND 7(C). ........................................................................ 12

       A.    OIP Properly Withheld Information Under Exemption 5..................................... 12

       B.    OIP and FBI Properly Withheld Information Under Exemption 6...................... 17

       C.    OIP Properly Withheld Information Under Exemption 7(C). ............................ 23

       D.    OIP and FBI Released All Reasonably Segregable Portions Of Responsive Records. ......................................................................................... 25

CONCLUSION.......................................................................................................... 26

# TABLE OF AUTHORITIES

**CASES**

*Bartko v. U.S. Dep't of Justice,*
    167 F. Supp. 3d 55 (D.D.C. 2016) ........................................................................ 11

*Bigwood v. U.S. Dep't of Def.,*
    132 F. Supp. 3d 124 (D.D.C. 2015) ...................................................................... 11

*Campbell v. U.S. Dep't of Justice,*
    164 F.3d 20 (D.C. Cir. 1998) ................................................................................. 7

*Carter v. U.S. Dep't of Commerce,*
    830 F.2d 388 (D.C. Cir. 1987) ............................................................................. 18

*Coastal States Gas Corp. v. U.S. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) ............................................................................. 13

*Competitive Enter. Inst. v. EPA,*
    232 F. Supp. 3d 172 (D.D.C. 2017) ...................................................................... 17

*Davis v. U.S. Dep't of Justice,*
    968 F.2d 1276 (D.C. Cir. 1992) ........................................................................... 24

*Defenders of Wildlife v. U.S. Dep't of Justice,*
    314 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................... 7

*Diamond v. Atwood,*
    43 F.3d 1538 (D.C. Cir. 1995) ............................................................................... 5

*FBI v. Abramson,*
    456 U.S. 615 (1982) ............................................................................................... 6

*Freedom Watch, Inc. v. NSA,*
    49 F. Supp. 3d 1 (D.D.C. 2014)
    *aff'd and remanded,* 783 F.3d 1340 (D.C. Cir. 2015) ......................................... 17

*Gardels v. CIA,*
    689 F.2d 1100 (D.C. Cir. 1982) ............................................................................. 6

*Ground Saucer Watch, Inc. v. CIA,*
    692 F.2d 770 (D.C. Cir. 1981) ............................................................................... 7

*Hayden v. NSA,*
    608 F.2d 1381 (D.C. Cir. 1979) ............................................................................. 6

*Huntington v. U.S. Dep't of Commerce*,
  234 F. Supp. 3d 94 (D.D.C. 2017) ....................................................................... 11

*In re Apollo Group, Inc. Sec. Litig.*,
  251 F.R.D. 12 (D.D.C. 2008) ............................................................................... 13

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ............................................................................. 12

*Johnson v. Executive Office for U.S. Attorneys*,
  310 F.3d 771 (D.C. Cir. 2002) ............................................................................. 26

*Judicial Watch, Inc. v. Clinton*,
  880 F. Supp. 1 (D.D.C. 1995),
  *aff'd*, 76 F.3d 1232 (D.C. Cir. 1996) .................................................................. 13

*Judicial Watch, Inc. v. Export-Import Bank*,
  108 F. Supp. 2d 19 (D.D.C. 2000) ....................................................................... 13

*Kidd v. U.S. Dep't of Justice*,
  362 F. Supp. 2d 291 (D.D.C. 2005) ....................................................................... 8

*Larson v. U.S. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ............................................................................... 6

*Lesar v. U.S. Dep't of Justice*,
  636 F.2d 472 (D.C. Cir. 1980) ............................................................................. 19

*Long v. OPM*,
  692 F.3d 185 (2d Cir. 2012) ........................................................................... 19, 20

*Mapother v. U.S. Dep't of Justice*,
  3 F.3d 1533 (D.C. Cir. 1993) ............................................................................... 12

*Meeropol v. Meese*,
  790 F.2d 942 (D.C. Cir. 1986) ........................................................................... 6, 7

*Montrose Chem. Corp. v. Train*,
  491 F.2d 63 (D.C. Cir. 1974) ............................................................................... 14

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ........................................................................................... 12

*Oglesby v. U.S. Dep't of the Army*,
  920 F.2d 57 (D.C. Cir. 1990) ....................................................................... 6, 7, 11

*Painting & Drywall Work Pres. Fund, Inc. v. HUD*,
  936 F.2d 1300 (D.C. Cir. 1991) ............................................................................ 17

*People for the Am. Way Found. v. Nat'l Park Serv.*,
  503 F. Supp. 2d 284 (D.D.C. 2007) ...................................................................... 13

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ................................................................................ 7

*Protect Democracy Project, Inc. v. U.S. Dep't of Defense*,
  320 F. Supp. 3d 162 (D.D.C. 2018) ...................................................................... 17

*Pub. Emps. for Envtl. Responsibility v. Int'l Boundary & Water Comm'n*,
  740 F.3d 195 (D.C. Cir. 2014) .............................................................................. 19

*Reed v. NLRB*,
  927 F.2d 1249 (D.C. Cir. 1991) ................................................................. 18, 19, 20

*Reliant Energy Power Generation, Inc. v. FERC*,
  520 F. Supp. 2d 194 (D.D.C. 2007) ........................................................................ 6

*Roberts v. U.S. Dep't of Justice*,
  Civ. No. 92-1707 (NHJ), 1995 WL 356320 (D.D.C. Jan. 29, 1993) ...................... 8

*Rockwell Int'l Corp. v. U.S. Dep't of Justice*,
  235 F.3d 598 (D.C. Cir. 2001) .............................................................................. 13

*Russell v. U.S. Dep't of the Air Force*,
  682 F.2d 1045 (D.C. Cir. 1982) ....................................................................... 13, 15

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) .............................................................................. 8

*Schrecker v. U.S. Dep't of Justice*,
  349 F.3d 657 (D.C. Cir. 2003) ................................................................................ 8

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ............................................................................ 21

*TransUnion, LLC v. FTC*,
  141 F. Supp. 2d 62 (D.D.C. 2001) ........................................................................ 18

*U.S. Dep't of Defense v. Fed. Labor Relations Auth.*,
  510 U.S. 487 (1994) ............................................................................................... 18

*U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*,
  489 U.S. 749 (1989) ........................................................................................... 17, 19

*U.S. Dep't of the Air Force v. Rose*,
  425 U.S. 352 (1976) ................................................................................................ 18

*Valencia–Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) .................................................................................. 7

*W. Ctr. for Journalism v. IRS*,
  116 F. Supp. 2d 1 (D.D.C. 2000),
  *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001) ...................................................................... 8

*Weisberg v. U.S. Dep't of Justice*,
  745 F.2d 1476 (D.C. Cir. 1984) ............................................................................. 6, 7

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) .................................................................................. 7

## STATUTES

5 U.S.C. § 552 ................................................................................................... *passim*

## RULES

Fed. R. Civ. P. 56 .................................................................................................... 5

## REGULATIONS

28 C.F.R. § 16.5 ..................................................................................................... 2

## INTRODUCTION

Plaintiff Freedom Watch, Inc. filed this Freedom of Information Act ("FOIA") case seeking communications between the media and the Office of Special Counsel Robert Muller III or the Federal Bureau of Investigation related to the Special Counsel's investigation of Russian interference in the 2016 presidential election.  In response to Plaintiff's request, Defendants produced all responsive records, subject to appropriate withholdings.  This case presents no novel or difficult questions of law.  Because Defendants have satisfied their obligations under FOIA, the Court should grant summary judgment in Defendants' favor.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 3, 2018, Plaintiff faxed a FOIA request to the U.S. Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), and the Special Counsel's Office ("SCO") seeking

> documents and records . . . that refer or relate with regard to communications to and from the media . . . concerning the activities of Special Counsel Robert Mueller and/or his staff as well as the Federal Bureau of Investigation, concerning the investigation of alleged Russian collusion and related matters concerning the Trump Presidential Campaign and the Trump Transition Team . . . .

Compl. Ex. at 3, 7-11, ECF No. 1-1.[1]  Plaintiff subsequently informed counsel for Defendants that Plaintiff seeks only records of communications to and from the media rather than purely internal communications, *see* Decl. of Joseph Dugan at Bates 005, ECF No. 12-3 ("Dugan Decl.").  Plaintiff's representation is consistent with Plaintiff's other characterization of its request.  *See* Pls.' Mot. for Summ. J. at 2-3, ECF No. 10 (opining that it is "impossible for Defendants to claim and [*sic*] exemptions or privileges due to the very nature of Freedom Watch's FOIA request, which asks for 'communications to and from the media'").

---

[1] Plaintiff also mailed its request on January 2, 2018.  Compl. Ex. 1 at 12-16.

Plaintiff filed this action on January 15, 2018, just twelve days after Plaintiff transmitted its FOIA request.  On January 23, 2018, the FBI informed Plaintiff that it had granted Plaintiff's request for expedited processing.  Answer Ex. B at 2, ECF No. 9-1.  On February 20, 2018, DOJ's Office of Information Policy ("OIP") likewise informed Plaintiff that its request for expedition had been granted with respect to records held by DOJ's Public Affairs Office ("PAO") and the SCO. Answer Ex. D at 2, ECF No. 8-5.  Because Defendants expedited Plaintiff's request, it was given priority, placed in the processing track for expedited requests, and processed as soon as practicable. *See* 28 C.F.R. 16.5(e)(4).

Although Defendants could have insisted Plaintiff amend its Complaint to add a properly exhausted withholding claim, Defendants instead answered the Complaint on February 20, 2018. *See* ECF No. 8.  The Court then entered a Minute Order, on March 3, 2018, directing the parties to "meet and confer to propose a joint scheduling order for further proceedings in this case by no later than April 1, 2018."  Yet, on March 23, 2018, before any such conference had taken place, *see* Dugan Decl. at Bates 010-011, Plaintiff moved for summary judgment, *see* ECF No. 10. Thereafter, the parties filed their joint status report on March 30, 2018, ECF No. 11, and the Court ruled three days later that Defendants must complete their search for potentially responsive records by the end of April and "shall file a status report apprising the Court of the number of responsive documents and defendants' position as to further scheduling matters by no later than May 11, 2018," Apr. 2, 2018 Minute Order.

In a status report dated May 11, 2018, Defendants informed the Court that their searches had located records potentially responsive to Plaintiff's FOIA request, as follows: (1) 9,016 potentially responsive pages from the SCO; (2) 1,400 potentially responsive pages from DOJ's PAO; and (3) approximately 337 potentially responsive pages from FBI.  In the same status report,

Defendants proposed to produce records to Plaintiff on a rolling basis, beginning on or before July 9, 2018. *See* ECF No. 17.  In response to Defendants' proposal, Plaintiff's response (ECF No. 18), and following a status conference on May 24, 2018, the Court denied Plaintiff's motion for summary judgment as moot and directed Defendants to produce all responsive, non-exempt documents to Plaintiff by September 4, 2018. *See* May 25, 2018 Minute Order.

On August 29, 2018, Defendants moved for an extension of the final production deadline. *See* ECF No. 20.  Although Defendants had expected to complete timely production of all of the responsive, non-exempt documents that they had located in their earlier searches, Defendants learned of a technical issue that impacted their searches of e-mail records held by custodians at the SCO and the PAO.  Accordingly, Defendants requested additional time to re-run their searches and to determine whether there were any additional responsive, non-exempt records that should be produced to Plaintiff.  Defendants submitted with their motion a sworn declaration from Joseph F. Klimavicz¸ who described the technical issue that necessitated Defendants' motion. *See* ECF No. 20-3.

On September 17, 2018, the Court directed Defendants to submit a status report by September 26, 2018 to state how many additional records, if any, must be processed and to estimate how long it would take to produce those records to Plaintiff. *See* Sept. 17, 2018 Minute Order. The Court further directed Defendants to "describe the technical issue the government discovered and explain why the government did not discover the issue earlier." *Id.*

In response to the Court's Order, on September 26, 2018, Defendants submitted a second declaration from Mr. Klimavicz, describing in further detail the genesis of the technical issue, the sequence of events, the efforts taken to address the problem, and the timing of those efforts. *See* ECF No. 24-1.  Defendants also reported that, through their further remedial searches, OIP

determined that there were approximately 1,954 additional pages of potentially responsive to Plaintiff's request from the SCO and approximately 460 more pages from DOJ's PAO—though Defendants cautioned that those page counts may decline as OIP conducted its further review and removed any duplicates. *See* ECF No. 24. After considering Defendants' status report, the Court ordered Defendants to finalize production of the additional responsive, non-exempt records by November 1, 2018. *See* Oct. 1, 2018 Minute Order.

As ordered, Defendants finalized their production to Plaintiff on November 1, 2018. The total production consists of 5,880 pages from OIP and 293 pages from the FBI. *See* Declaration of Vanessa R. Brinkmann ¶ 10 ("Brinkmann Decl."), attached as Exhibit 1; Declaration of David M. Hardy ¶ 10 ("Hardy Decl."), attached as Exhibit 2.[2] The next day, the Court ordered the parties to file by November 19, 2018 a joint status report regarding Defendants' production and to provide recommendations regarding further proceedings.

On November 19, 2018, the parties filed the ordered joint status report. In that report, Defendants proposed a briefing schedule for summary judgment briefing. *See* ECF No. 27. Plaintiff, however, indicated that, by December 15, 2018, it would "be filing a written brief showing that all responsive records have not been produced and that there are numerous unwarranted redactions in what was produced." *Id.* at 1. Plaintiff further represented that its brief "will also set forth good cause for discovery of the alleged search, which," according to Plaintiff, "was defective given Defendants' eleventh hour claims of an alleged computer/email glitch which corrupted the search, and perhaps worse." *Id.* at 1-2.

---

[2] On April 8, 2019, OIP made a supplemental production to Plaintiff, releasing in part a one-page e-mail that it previously withheld in full. *See* Brinkmann Decl. ¶ 8. After reviewing its withholdings OIP also re-released five pages of responsive materials that were re-processed for consistency with other previously produced materials. *Id.*

In light of Plaintiff's position in the joint status report, the Court indicated that it "is not inclined to agree with plaintiff that good cause exists for allowing discovery regarding the adequacy of the defendants' search." Nov. 26, 2018 Minute Order. The Court, however, allowed Plaintiff to file a brief regarding the propriety of allowing discovery. *Id.*

On December 4, 2018, Plaintiff filed its response to the Court's Order, explaining why—in Plaintiff's view—discovery was necessary. *See* ECF No. 29. The Court rejected Plaintiff's arguments, explaining that Plaintiff had not "raised a sufficient question as to the agency's good faith in responding to its FOIA request." *See* Jan. 3, 2019 Minute Order. Instead, Plaintiff offered only "speculative accusations." *Id.* As the Court put it, "there is no basis in reality to believe" that Defendants' disclosure of the technical issue "was, as Freedom Watch puts it, an 'attempt to shield themselves from the public seeing evidence of their routinely leaking grand jury information to the media and other disclosures from their tactical motivations.'" *Id.* Indeed, based on a review of Defendants' sworn declarations, the Court concluded that the technical issue Defendants flagged was "benign." *Id.* Accordingly, the Court ordered the parties to file another status report on or before February 4, 2019 proposing a summary judgment briefing schedule.

Defendants now file this motion for summary judgment pursuant to the Court's March 29, 2019 Minute Order.

## ARGUMENT

## I.   STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA actions are typically resolved on summary judgment, *see Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C.

2007), and the Court conducts a *de novo* review of the agency's response to any challenged FOIA requests, *see* 5 U.S.C. § 552(a)(4)(B).  When a requester challenges the adequacy of an agency's search, "[i]n order to obtain summary judgment, the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The agency must also justify any records withheld (in whole or in part) subject to FOIA's statutory exemptions.  Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (quotation omitted).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citing *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982); *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

## II.    DEFENDANTS CONDUCTED REASONABLE SEARCHES

The Court may grant summary judgment concerning the adequacy of an agency's search for responsive records based on information provided in "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby*, 920 F.2d at 68); *see Meeropol v.*

*Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986).  "Such agency affidavits attesting to a reasonable search 'are afforded a presumption of good faith,' and 'can be rebutted only with evidence that the agency's search was not made in good faith.'"  *Defenders of Wildlife v. U.S. Dep't of Justice*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *TransUnion, LLC v. FTC*, 141 F. Supp. 2d 62, 64 (D.D.C. 2001)).

Reasonableness, not perfection, is therefore the Court's guiding principle in determining the adequacy of a FOIA search.  *Defenders of Wildlife*, 314 F. Supp. 2d at 8; *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).  Moreover, the mere fact that a search uncovers few documents—or even none at all—does not render that search inadequate: "the issue to be resolved is not whether there might exist any . . . documents possibly responsive to the request, but rather whether the search for those documents was adequate."  *Weisberg*, 745 F.2d at 1485; *see also Meeropol*, 790 F.2d at 952-53 (search is not presumed unreasonable simply because it fails to produce all relevant material); *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist).  Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micro manage the executive branch."  *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quotation omitted).

To that end, in evaluating the adequacy of a search, courts accord agency affidavits a presumption of good faith that cannot be rebutted by speculation "about the existence and discoverability of other documents."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted); *see also Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (same).  Rather, to establish the sufficiency of its search, the

agency's affidavits need only explain the "scope and method of the search" in "reasonable detail." *Kidd v. U.S. Dep't of Justice*, 362 F. Supp. 2d 291, 295 (D.D.C. 2005). FOIA does not require agencies to search every record system, but only those systems in which the agency believes responsive records are likely to be located. *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001); *Roberts v. U.S. Dep't of Justice*, Civ. A. No. 92-1707 (NHJ), 1995 WL 356320, at *1 (D.D.C. Jan. 29, 1993). As explained below, a reasonable search is precisely what Defendants performed here.

### A.      OIP's Search for Responsive Records

OIP is responsible for processing FOIA requests that seek records from within OIP and from within six senior leadership offices at DOJ. *See* Brinkmann Decl. ¶ 1. As necessary, and as relevant in this litigation, OIP also processes FOIA requests that seek records from within the SCO. *Id.* OIP has dedicated Initial Request Staff ("IR Staff") who determine whether records responsive to a FOIA request exist and, if so, whether they should be released in accordance with FOIA. *Id.* In processing requests, the IR Staff consults, as needed, with personnel in the senior leadership offices and the SCO, and with personnel in other components within DOJ in order to assist with its determinations. *Id.*

In this case, upon review of Plaintiff's request, which seeks communications to and from the media concerning the SCO, OIP determined that responsive records were most likely to reside within two DOJ offices: (1) PAO—tasked with coordinating DOJ's relationship with the news media—and (2) the SCO. *Id.* ¶ 13. In order to capture all potentially responsive records, OIP conducted broad searches of unclassified e-mail records and computer hard drives within those two offices. *Id.* ¶¶ 14-18; *see also id.* ¶ 12. Specifically, OIP conducted remote electronic searches of the e-mail records and computer files of fifteen PAO custodians that OIP determined may have communicated with the media based on their positions. *Id.* ¶ 14. Likewise, OIP conducted remote

electronic searches of e-mail records and computer hard drives for two SCO custodians who, based on consultation with the SCO, OIP determined were responsible for communications with the media. *Id.* ¶ 15. Those two SCO custodians were detailed to the SCO from other DOJ components, one from PAO and one from the United States Attorney's Office for the Eastern District of Virginia ("EDVA"). *Id.* In addition to searching for records held by those custodians, OIP searched the SCO's general press inquiries mailbox, Specialcounselpress@usdoj.gov. *Id.*

For all the custodians described above and for the SCO's general press inquiries mailbox, OIP identified responsive records by applying a set of search terms specifically tailored to Plaintiff's request. *See id.* ¶ 17. For the PAO custodians, OIP's search covered documents within the date range of July 1, 2015 through December 31, 2017. *Id.* ¶ 16. For the SCO custodians, the search terms were applied to e-mails from the date the e-mail accounts were created through December 31, 2017. *Id.*

When OIP learned of the technical issue that Defendants identified in their August 29, 2018 filing, ECF No. 20; *see also* Decl. of Joseph F. Klimavicz, ECF No. 20-3, OIP worked closely with its electronic search support team in the Justice Management Division's Office of the Chief Information Officer to re-run the searches described above, which identified additional responsive records across the entire collection of e-mail and computer files for the relevant custodians. *See* Brinkmann Decl. ¶ 18.

While conducting its searches, OIP also learned that, in addition to e-mails and computer files, potentially responsive text message records existed within the PAO and the SCO. *Id.* ¶¶ 19-20. To ensure that OIP gathered and processed all such text messages were processed, OIP worked with its point of contact in PAO, who conducted a manual review of text message conversations of the custodians who would be reasonably likely to discuss topics covered by Plaintiff's request.

*Id.* ¶ 19.  That PAO point of contact also canvassed other PAO staff in inquire whether any other individuals within PAO may have potentially responsive text messages, all of whom responded that they did not.  *Id.*  Similarly, as to the SCO, OIP worked with its SCO point of contact, who coordinated a manual review of the text messages belonging to the only SCO custodian believed to be reasonably likely to have potentially responsive text messages.  *Id.* ¶ 20.  The other SCO custodian responsible for public affairs informed OIP that he had not communicated by text message with any members of the media concerning SCO matters.  *Id.*

### B.    FBI's Search for Responsive Records

As explained in the Declaration of David M. Hardy, based on the specific information requested, the FBI determined that a targeted search within the FBI's Office of Public Affairs ("OPA") was appropriate and mostly likely to identify responsive information.  *See* Hardy Decl. ¶ 14.  OPA manages and oversees the FBI's media relations.  Only authorized individuals are permitted to communicate with the media concerning FBI matters, and those individuals are required to coordinate media contacts with the approval of OPA and/or specifically designated heads of field offices.  *Id.* ¶ 15.  The media communications that Plaintiff requested involve matters of national interest, and therefore OPA is the only location likely to have any potentially responsive records.  *Id.*

To conduct its search within OPA, FBI identified OPA employees who have authorization to contact the media on a regular basis.  FBI then had those employees search their e-mail accounts for communications from July 1, 2015 through December 31, 2017 containing search terms specifically designed to capture records responsive to Plaintiff's request.  *Id.* ¶ 16.

OPA then forwarded all potentially responsive records identified through the search to the FBI's Record/Information Dissemination Section ("RIDS"), whose mission includes responding to FOIA requests for access to FBI records.  *Id.*  RIDS then reviewed and processed those records.

Because OPA advised RIDS that two of its employees who were likely to have responsive records were not available to conduct searches, RIDS ran the same search terms for the same dates through an automated search of those employees' e-mail accounts.  *Id.*  That automated search located additional responsive records, which RIDS also reviewed and processed.  *Id*.

## C.    Defendants' Searches Were More Than Adequate

The Brinkmann and Hardy Declarations submitted along with this Motion demonstrate that both OIP and FBI "made a good faith effort to conduct . . . search[es] for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.   OIP and FBI each searched "'*all* locations likely to contain responsive documents.'"  *Huntington v. U.S. Dep't of Commerce*, 234 F. Supp. 3d 94, 103-04 (D.D.C. 2017) (quoting *Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 64 (D.D.C. 2016)).   And each declaration describes in detail the particular offices searched and the search methods used to locate records responsive to the particular request.  *See* Brinkmann Decl. ¶¶ 13-25; Hardy Decl. ¶¶ 11-17.

Plaintiff cannot not overcome the patent reasonableness of OIP's and FBI's searches by speculating that there may be other responsive records that the agencies have not produced. Indeed, "[a]n agency's 'failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist,'. . . 'does not undermine the determination that the agency conducted an adequate search for the requested records.'"  *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 143 (D.D.C. 2015) (citation omitted).  Here, any assertion by Plaintiff "that various records related to [its] request must have existed is 'simply conjecture' and is 'insufficient to justify a finding that the search was inadequate.'"  *Id.* (citation omitted).  And, indeed, the Court has already considered Plaintiff's prior allegations that Defendants acted in bad faith and determined that they are baseless.  *See* Jan. 3, 2019 Minute Order.  Accordingly—whatever additional

unsupported theories Plaintiff may conjure—the Court should find that Defendants satisfied their respective search obligations under FOIA.

## III.     DEFENDANTS PROPERLY WITHHELD INFORMATION UNDER EXEMPTIONS 5, 6, AND 7(C)

### A.     OIP Properly Withheld Information Under Exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  It ensures that members of the public cannot obtain through FOIA what they could not ordinarily obtain through discovery in a lawsuit against the agency, including, as relevant here, information protected from disclosure on the basis of the deliberative process privilege.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-49 (1975).

The deliberative process privilege is uniquely available to the government.  *See Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001).  It applies to "decisionmaking of executive officials generally" and protects documents containing deliberations that are part of the process by which government decisions are formulated.  *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997).  The purpose of the privilege is to encourage full and frank discussion of legal and policy issues within the government, and to protect against public confusion resulting from disclosure of reasons and rationales that were not ultimately the bases for the agency's action.  *See, e.g.*, *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *Russell v. U.S. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).  The privilege is grounded in the common-sense proposition that "those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision making process."  *Sears, Roebuck & Co.*, 421 U.S. at 150-51 (quotations and citation omitted).

To fall within the scope of the deliberative process privilege, a document must be both predecisional and deliberative. *See Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is predecisional if "it was generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of the consultative process." *Id.* "To establish that [a] document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000).

Courts have held that the deliberative process privilege broadly applies to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. As courts in this Circuit have explained, "[D]raft documents by their very nature, are typically predecisional and deliberative, because they reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *In re Apollo Group, Inc. Sec. Litig.*, 251 F.R.D. 12, 31 (D.D.C. 2008) (non-FOIA case) (quotations omitted), *aff'd on other grounds and remanded by*, 329 F. App'x 283 (D.C. Cir. 2009). Accordingly, "drafts are commonly found exempt under the deliberative process exemption." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007); *see also Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995), *aff'd*, 76 F.3d 1232 (D.C. Cir. 1996).

Exemption 5 covers "not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency," and, therefore, applies if, "disclosure of even purely factual material would

reveal an agency's decision-making process." *Russell*, 682 F.2d at 1048. It has been held to protect "material reflecting deliberative or policy-making processes." *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 67 (D.C. Cir. 1974). Here, OIP withheld material under Exemption 5 in 116 pages of records that fall into two categories: (1) deliberative discussions regarding press coverage and press inquiries; and (2) deliberative notes regarding press coverage and press inquiries. Brinkmann Decl. ¶ 33.

OIP redacted three pages in the first category. *Id.* ¶ 29. The redacted material falls within Exemption 5 because the materials are internal e-mail communications from SCO staff to the SCO's public affairs officials regarding press inquiries. *Id.* ¶ 35. The redacted portions of those communications are preliminary thoughts on whether and how to respond to press inquiries. *Id.* ¶ 36. In each instance, SCO staff are reacting in real time, sharing their opinions and suggestions for how best to respond to the press inquiries. *Id.* ¶ 35.

It is beyond question under the law of this Circuit that this sort of internal deliberation regarding how to respond to press inquiries are covered by Exemption 5. *See, e.g.*, *Judicial Watch v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010). To put a finer point on it, the material is predecisional because it either consists of ongoing discussions that pre-dated the final responses to press inquiries, or reflects pre-decisional deliberations. Brinkmann Decl. ¶ 36; *see also Judicial Watch*, 796 F. Supp. 2d. at 31 ("Post-decisional documents properly fall under the deliberative process privilege when they recount or reflect pre-decisional deliberations."); *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 234 (D.D.C. 2009 (finding information that recounted 'the ingredients of the decision-making process" properly withheld even though the interview in which the information was disclosed took place after

decisions were made).  It is also deliberative because it contains preliminary opinions to aid in the decision-making process.  Brinkmann Decl. ¶ 36.  Specifically, the redacted material contains evaluative discussion and preliminary assessments by Department staff as they analyzed, made recommendations, gave advice, and worked toward formulating strategies for responding to the press. *Id*.

OIP withheld the second category of redacted material—although somewhat different in form—for the same reasons.  This redacted material is in 113 pages of notes in a "Weekly Press Report" maintained by SCO's public affairs personnel.  *Id.* ¶ 37.  The SCO created those Weekly Press Reports to track its responses to the press and to determine whether any further responses may be necessary.  *Id*.  The Weekly Press Report is made up seven columns that show: (1) the date of the press inquiry; (2) the media outlet; (3) the name of the reporter; (4) the method of contact; (5) the subject of the inquiry; (6) "research"—which documents steps taken in preparation of a response, if any; and (7) the "final response" to that inquiry.  *Id*.  The Reports also document public statements the SCO made (beyond "no comment") and publications the SCO's public affairs officials flagged for leadership.  *Id.*

The redacted portions of these Weekly Press Reports are all contained within only two of the seven columns—the "research" and "final response" columns.  Those portions consist of public affairs officials' notes of what steps should be taken in order to develop a final response to press inquiries, if any.  *See id.* ¶ 38.  Importantly, despite its name, the information in the "final response" column does not actually include the ultimate ("final") response to the media.  *Id*.  Instead, it consists of additional research and facts compiled in order to *develop a recommendation* for the actual final response.  *Id*.  In other words, the redacted material in that column is not, in fact, the final response itself, but is rather deliberative material compiled to *inform* a final response.  *Id*.

Other redacted information in the "research" and "final response" columns shows which press inquiries were selected for briefing and were singled out for specific SCO officials and management, which is also deliberative.  *Id*.  Specifically, OIP redacted selected stories that were identified by the SCO public affairs officials for briefing SCO staff and leadership.  These deliberative notes attempt to succinctly summarize particular events, identify important issues, and provide key background information in a concise summary format for ease of understanding and presentation.  *Id*.  The authors reviewed the universe of facts and possible issues arising on the topic at hand, and then select facts and issues they deem most important for senior SCO staff review and to provide the necessary background information.  *Id*.  The decision to include certain factual information located in the course of their research or in preparing a final response is itself an important part of the deliberative process.  *Id*.  Furthermore, the culling of other factual information was, in and of itself, a necessary part of the SCO's deliberations.  *Id.*

As to both categories of material, disclosure would clearly harm the Department's deliberative process.  Were this type of material to be released, Department employees would become "reticent to document notes of their internal decision-making processes, to share their opinion, and they would be circumspect in their willingness to engage in internal discussions with other employees." *Id*. ¶ 41.  This lack of candor would seriously impair the Department's ability to foster forthright internal decision, and the strength of official agency decisions would be diminished if the Department could no longer rely on a robust, pre-decisional, and deliberative process where employees feel free to keep notes and share their preliminary assessments.  *Id.*

For all the reasons above, OIP properly invoked Exemption 5 to protect predecisional, deliberative information.  And, indeed, the material that OIP withheld—deliberations surrounding whether and how to respond to the press—is precisely the type of information that courts in this

16

Circuit routinely hold to be covered under Exemption 5.  *See, e.g.*, *Judicial Watch*, 796 F. Supp. 2d at 31; *Judicial Watch*, 736 F. Supp. 2d at 208; *Protect Democracy Project, Inc. v. U.S. Dep't of Defense*, 320 F. Supp. 3d 162, 177 (D.D.C. 2018); *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 187-88 (D.D.C. 2017); *Freedom Watch, Inc. v. NSA*, 49 F. Supp. 3d 1, 8 (D.D.C. 2014), *aff'd and remanded by*, 783 F.3d 1340 (D.C. Cir. 2015).

> **B.     OIP and FBI Properly Withheld Information Under Exemption 6.**

OIP and FBI properly withheld information pursuant to FOIA Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6.  In *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989), the Court rejected a "cramped notion of personal privacy" under the FOIA's exemptions and instead emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." *Id.* at 763.  As the Supreme Court has explained, "[p]rivacy is the claim of individuals . . . to determine for themselves when, how, and to what extent information about them is communicated to others." *Id.* at 764 n.16 (citation omitted).

In the context of FOIA, privacy is of particular importance because a disclosure required by FOIA is a disclosure to the public at large.  *See Painting & Drywall Work Pres. Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (finding that if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put").  It is for this reason that Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure.  *See U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976). The agency must determine whether disclosure of the information threatens a protectable privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure,

if any.  *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  Individuals have a privacy interest in personal information, of course, even if it is not of an embarrassing or intimate nature. *See Washington Post Co.*, 456 U.S. at 600 (recognizing that "while information such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal," such information may be entitled to protection under Exemption 6). And the "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to public understanding *of the operations or activities of the government*."  *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal citation and quotation marks omitted).  Plaintiff bears the burden of demonstrating that disclosure of the challenged information would serve this interest.  *See Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 390-91 nn. 8 & 13 (D.C. Cir. 1987).  In this case, Plaintiff is unable to satisfy that burden.

FBI and OIP both properly invoked Exemption 6 to withhold narrow categories of information, as described in the Brinkmann and the Hardy Declarations.  For the reasons discussed below, those withholdings were proper under FOIA.

*1.  Identities and Identifying Information of Government Personnel*.  OIP and FBI both properly withheld the names and other personally identifying information of certain government employees—including DOJ and FBI professional staff—who were mentioned in the responsive records.  Brinkmann Decl. ¶¶ 52-53; Hardy Decl. ¶¶ 24-26.

As detailed in the Brinkmann Declaration, OIP withheld the names and contact information (*i.e.*, official email accounts and telephone numbers) of certain SCO and law enforcement employees.  *See* Brinkmann Decl. ¶¶ 52-53.  OIP considered the "sensitive and often contentious nature of the SCO's work, as well as the work law enforcement personnel conduct" and determined

18

that disclosure of their identities and information that could be used to identify them could seriously prejudice their ability to conduct investigations going forward and could subject them to unwanted harassment.  *Id.* ¶ 53; *see also Long v. OPM*, 692 F.3d 185, 192 (2d Cir. 2012) (noting that "[i]t is not uncommon for courts to recognize a privacy interest in a federal employee's work status . . . if the occupation alone could subject the employee to harassment or attack . . . [such as] law enforcement agents who participated in an investigation"); *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (recognizing that law enforcement officers "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives"); *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18 (D.C.C. 2013) (explaining that "preventing the burden of unsolicited emails and harassment" is a "substantial privacy interest").  OIP similarly determined that releasing contact information of SEO and law enforcement employees could subject them to harassment.  Brinkmann Decl. ¶¶ 52. Balancing the employees' privacy interests in that information, OIP concluded that it was not outweighed by the public interest in disclosure, because it would not aid the public in understanding how the Department carries out its duties.  *Id.*

Similarly, OIP properly withheld the identities and personally identifying information of (1) individuals working for the SCO whose identities are not already public, and (2) individuals who reporters speculated were working for the SCO but who were not, in fact, doing so.  *Id.* ¶ 49. Given the high-profile nature of the SCO's work, there was considerable public speculation as to the SCO's staffing decisions, some of it inaccurate.  *Id.*  In some instances, reporters sent their speculation to SCO personnel for comment.  *Id.*  OIP determined that, in light of the contentious debate surrounding the investigation, disclosing the names and personally identifying information of SCO employees whose names are not public could seriously prejudice their effectiveness in

conducting investigations going forward and subject them to unwarranted harassment. *Id.*  OIP also determined that there is no overriding public interest in the identity of these individuals, because that information would not shed any meaningful light on the operations of the Department. *Id*.  As to individuals who were not, in fact, working for the SCO, OIP determined that those individuals also have strong privacy interests in the withheld information, because they could still be subject to unwarranted harassment, and disclosure of their identities could prejudice their effectiveness if they are approached for comment as to their connection with the SCO (or lack thereof). *Id.*  And, of course, releasing the names and/or personally identifying information of individuals who did not work for the SCO would not shed light on the Department's work. *Id.*

As to the FBI, the FBI personnel whose names and personally identifying information were withheld "were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released."  Hardy Decl. ¶ 24; *see also Long*, 692 F.3d at 192.  After identifying those privacy interests, FBI considered whether there was an overriding public interest in disclosure and determined that there was none, because "disclosing the identities of FBI professional staff would not significantly increase the public's understanding of the FBI's operations and activities."  Hardy Decl. ¶¶ 25.  Under the same rationale, the FBI also properly withheld the names of other government employees, including the name of a Congressional Staff employee and the identities of certain other non-FBI DOJ employees. *Id.* ¶ 28.  As stated in the Hardy Declaration, "these government employees maintain substantial privacy interests just as FBI employees do," and "this information would not significantly increase the public's understanding of the FBI's operations and activities." *Id.*

20

2. *Non-Public Contact Information of Reporters*.  Both OIP and FBI also withheld the non-public contact information of reporters contained in the responsive records.  *See* Brinkmann Decl. ¶ 52; Hardy Decl. ¶ 27.  OIP withheld the personal email accounts and cell phone numbers of reports because OIP determined that "release of such information could subject those individuals to unwarranted harassment in their personal time and personal lives."  Brinkmann Decl. ¶ 52.  On the other hand, releasing that information would provide no insight to the public regarding the Department's functioning.  *Id.*

The FBI conducted a similar analysis and concluded that the purposes of FOIA do not require disclosure of reporters' direct contact telephone lines or cell phone numbers in this case. Hardy Decl. ¶ 27.  As explained in the Hardy Declaration,

> Members of the media maintain legitimate privacy interests in private information such as their direct telephone lines or cell phone numbers because the public could draw negative conclusions based on their inquiries to OPA or devote unwarranted attention and/or harassment toward the individuals based on their communications with OPA if their identities were disclosed.

*Id.*  Because there is no public interest in the disclosure of this non-public contact information of non-government persons, the FBI concluded that the information is protected by Exemption 6.

3. *Identities and Personally Identifying Information of Third Parties Merely Mentioned.* OIP and FBI both properly withheld the identities and personally identifying information of third parties merely referenced in the responsive records.   As OIP explains in the Brinkmann Declaration, it redacted material "pertaining to third parties not connected to the SCO, including images of individuals, third-party (not associated with SCO) political contributions, personal relationships or connections to Department employees, or reporter-supplied allegations of a third party's connections to the SCO's investigations."  Brinkmann Decl. ¶ 50.  In the redacted documents, reporters were attempting to obtain information through the SCO about third parties not connected to the SCO.  *Id.*  Particularly given the politically charged environment surrounding

the SCO's work, OIP properly determined that disclosure of this information relating to third parties, whose sole public connection to the work of the SCO is through reporters' inquiries, would subject those third parties to unwarranted harassment. *Id.* Nor would this disclosure aid the public's understanding of how the Department carries out its duties, because the third-parties are mentioned in the records only for the inquiring reporters' own purposes. *Id.*

The FBI similarly withheld a two-page record that was attached to a reporter's request and that would identify a third party about whom the reporter was inquiring. *See* Hardy Decl. ¶ 29. In balancing the interests of the third party against the interest in public disclosure, the FBI considered that "disclosure would reveal information about the third party and connect that information to an FBI investigation via the reporter's email inquiry," which would "carr[y] an extremely negative connotation" for the third party and subject that person to possible harassment. *Id.* On the other hand, disclosure of the two-page non-FBI record would not shed light on any of the operations or activities of the FBI—only the reporter's inquiry. *Id.*

4. *Other Non-Public Third-Party Information Received from Reporters*. OIP additionally withheld information contained in e-mails from journalists to SCO public affairs personnel regarding third parties if that information was not subsequently disclosed to the public through the journalists' reporting. Brinkmann Decl. ¶ 51. In these instances, journalists sought the SCO's comment on unverified information related to the third-parties. *Id.* OIP properly determined that, given the politically charged environment and intense public scrutiny surrounding the SCO's work, the third parties mentioned in the reporters' e-mails to the SCO could face unwanted harassment if information about them was made public. *Id.* The information also would not aid in the public's understanding of how the Department carries out its duties. The Department received the material

only because the journalists wanted confirmation of certain information, not because the information contributed to the work of the Department.  *Id.*

     *5.   Information Concerning Prior (pre-SCO) Contacts Between DOJ Officials and Reporters.*  OIP also withheld certain material regarding DOJ employees' contacts with reporters, prior to the SCO's investigation, that appears in the responsive records.  *Id.* ¶ 54.  This material consists of only of discussion of personal details about SCO officials' (pre-SCO) interactions with members of the news media.  SCO officials have a substantial privacy interest in this personal information.  *Id.*  The public interest in learning about how the Department operates, moreover, would not be served by releasing the discussion of personal connections that OIP withheld.  *Id.*  Any public interest is, at best, *de minimis* and does not outweigh the substantial privacy interests of the SCO officials.  *Id.*

     *6. Information of a Purely Personal Nature*:  Finally, OIP properly determined that there is no public interest in disclosing various public details pertaining to reporters, third parties, and Department employees—such as the vacation details, holiday plans, religious observances, and other similar information unrelated to any government function or activity—that appear in some of the responsive records.  *Id.* ¶ 48.  Because the individuals clearly maintain a privacy interest in these details, and because such information is not related to any official duties, it would not inform the public about the operation or activities of the SCO or its communications with the media.  *Id.*  Accordingly, OIP properly withheld such information from records responsive to Plaintiff's request.

### C.    OIP Properly Withheld Information Under Exemption 7(C).

     FOIA Exemption 7 protects from disclosure all "records or information compiled for law enforcement purposes" that could reasonably be expected to cause one of the six harms outlined in the Exemption's subparts.  5 U.S.C. § 552(b)(7).  "To fall within any of the exemptions under

the umbrella of Exemption 7, a record must have been 'compiled for law enforcement purposes.'" *Pub. Emps. for Envtl. Responsibility v. Int'l Boundary & Water Comm'n* , 740 F.3d 195, 202 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)).  "According to the Supreme Court, the term 'compiled' in Exemption 7 requires that information be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Id*. at 203 (citation omitted).  As explained in detail below and in the accompanying declarations submitted on their behalf, OIP asserted Exemption 7 to protect law enforcement-related information contained in the records OIP identified as responsive.  *See* Brinkmann Decl. ¶¶ 56-58.

In particular, OIP Exemption 7(C) authorizes withholding of information compiled for law enforcement purposes if release of the information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  If the records at issue were compiled for law enforcement purposes, Exemption 7(C) requires the agency to balance the relevant individual privacy rights against the public interest in disclosure.  *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 762; *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  The balancing analysis is similar to the analysis conducted under Exemption 6, but the analysis under Exemption 7(C) tilts more in favor of nondisclosure.  *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 755-56 (comparing statutory language of Exemption 6 and Exemption 7(C)); *Reed*, 927 F.2d at 1250-51 (same).  Here, OIP conducted this balancing assessment with respect to the challenged records and respectively concluded that the analysis tilts in favor of nondisclosure.

Specifically, OIP withheld portions of a one-page e-mail pursuant to Exemption 7(C), in conjunction with Exemption 6, to protect an individual's personal privacy.  *See* Brinkmann Decl. ¶¶ 56-58.  That e-mail consists of information provided by a member of the news media that the

sender thought may advance the SCO's investigation.  *Id.* ¶ 58.  Information provided by individuals concerning an investigation a productive investigative tools utilized by law enforcement agencies.  *Id.*  The largest roadblock to successfully obtaining the desired information is the fear of an individual that his or her identity could possibly be exposed and, he or she could consequently be harassed, intimidated or threatened with legal or economic reprisal, or possible physical harm.  *Id.*  The continued access to persons willing to assist in law enforcement investigations by providing pertinent factual information without invasions to their privacy outweighs any public benefit that could be derived from the disclosure of the identity of this individual.  *Id.*  OIP determined that release of the information may identify the sender and, accordingly, weighed the privacy interest of that individual against the public interest in disclosure and determined that the balance tipped strongly toward withholding.  *Id.*

### D.     OIP and FBI Both Released All Reasonably Segregable Portions of Responsive Records

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  OIP and FBI have met that requirement here.  The Brinkmann Declaration confirms that "there is no additional, non-exempt information that can be segregated for release to Plaintiff."  Brinkmann Decl. ¶¶ 55, 59; *see also id.* ¶¶ 42-43 (similarly confirming with respect to material withheld under Exemption 5 that OIP produced all reasonably segregable, non-exempt material).  Similarly, the Hardy Declaration confirms that the "FBI provided all non-exempt records or portions or records responsive to its FOIA request."  Hardy Decl. ¶ 32.  The released documents themselves also provide strong evidence of OIP's and FBI's good-faith efforts to provide all reasonably segregable information.

The Brinkmann and Hardy Declarations also explain why OIP and FBI, respectively are confident that they met their burden of segregability: both conducted a "line-by-line" review to carefully determine, in good faith, what portions can be released and what portions must be withheld.  *See* Brinkmann Decl. ¶¶ 42, 55, 59; Hardy Decl. ¶ 32.  Courts in this Circuit routinely enter summary judgment on the issue of segregability based on similar agency declarations.  *See, e.g.*, *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (agency demonstrated that there was no reasonably segregable non-exempt information where submitted affidavit showing that agency had conducted line-by-line review of each document withheld in full); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment.

Dated: April 8, 2019                    Respectfully submitted,

                                        HASHIM M. MOOPPAN
                                        Deputy Assistant Attorney General

                                        ELIZABETH J. SHAPIRO
                                        Deputy Branch Director

                                        */s/ Bradley P. Humphreys*
                                        BRADLEY P. HUMPHREYS
                                        District of Columbia Bar No. 988057
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, NW
                                        Washington, DC 20005
                                        Tel: (202) 305-0878

Fax: (202) 305-8517
E-mail: Bradley.Humphreys@usdoj.gov

*Attorneys for Defendants*