*Freedom Watch v. Mueller, et al.*
D.D.C. No. 1:18-cv-00088 (EGS)

# **<u>Exhibit 1</u>**

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FREEDOM WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT S. MUELLER III | ) | |
| Special Counsel | ) | |
| U.S. Department of Justice | ) | |
| 950 Pennsylvania Ave., N.W., Rm. B-103 | ) | |
| Washington, D.C. 20530, | ) | |
| | ) | |
| and | ) | Civ. Action No. 1:18-cv-00088 (EGS) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE | ) | |
| 950 Pennsylvania Ave., N.W. | ) | |
| Washington, D.C. 20530, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION | ) | |
| 170 Marcel Drive | ) | |
| Winchester, VA 22602, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF VANESSA R. BRINKMANN

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1.      I am Senior Counsel in the Office of Information Policy (OIP), United States

Department of Justice ("Department" or "DOJ").  In this capacity, I am responsible for

supervising the handling of the Freedom of Information Act (FOIA) requests processed by the

Initial Request Staff (IR Staff) of OIP that are in litigation.  The IR Staff of OIP is responsible

for processing FOIA requests seeking records from within OIP and from within six senior

leadership offices of the Department of Justice, specifically the Offices of the Attorney General

1

(OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy

(OLP), Legislative Affairs (OLA), and Public Affairs (PAO).  As necessary, and as especially

relevant in this case, OIP also processes FOIA requests seeking records from within DOJ's

Special Counsel's Office (SCO).  The IR Staff determines whether records responsive to FOIA

requests exist and, if so, whether they can be released in accordance with the FOIA.  In

processing such requests, the IR Staff consults with personnel in the senior leadership offices and

SCO and, when appropriate, with personnel in the Executive Branch.

2.      I make the statements herein on the basis of personal knowledge, as well as

information provided to me by others within the Department and/or Executive Branch with

knowledge of the types of records at issue in this case, and on information acquired by me in the

course of performing my official duties.

## I.      PLAINTIFF'S FOIA REQUEST AND OIP'S RESPONSES

3.      By letter submitted via facsimile, dated January 2, 2018, Plaintiff submitted a

FOIA request to OIP seeking records that refer or relate to "communications to and from the

media, domestic and foreign, concerning the activities of Special Counsel Robert Mueller and/or

his staff as well as the Federal Bureau of Investigation, concerning the investigation of alleged

Russian collusion and related matters concerning the Trump Presidential Campaign and the

Trump Transition Team with the print, internet, social media and radio and television networks."

Plaintiff also requested expedited processing of this FOIA request.  A copy of Plaintiff's FOIA

request, dated January 2, 2018, is attached hereto as Exhibit A.

4.      On January 15, 2018, Plaintiff filed suit.  See Complaint, ECF No. 1.

5.      By letter dated February 20, 2018, OIP acknowledged Plaintiff's FOIA request,

assigning it OIP tracking number DOJ–2018-001793 (OIP) and DOJ-2018-002230 (PAO), and

informed Plaintiff that its request for expedited processing had been granted.  In this

acknowledgement letter, OIP further advised Plaintiff that its FOIA request had been placed in

OIP's expedited processing track.  A copy of OIP's acknowledgement letter, dated February 20,

2018, is attached hereto as Exhibit B.

6.      By letter dated September 4, 2018, OIP provided an interim response to Plaintiff's

FOIA request.  OIP informed Plaintiff that searches had been conducted on behalf of SCO and

PAO and that 3,441 pages containing records responsive to Plaintiff's request were located.

Pursuant to this response, OIP released to Plaintiff 3,440 pages containing records responsive to

Plaintiff's request, some with excisions made pursuant to Exemptions 5 and 6 of the FOIA,

5 U.S.C. § 552(b)(5) and (b)(6).  Furthermore, OIP withheld in full one page pursuant to

Exemptions 6, (7)(A) and 7(C) of the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(A) and (b)(7)(C).[1]  A

copy of OIP's September 4, 2018 interim response letter is attached hereto as Exhibit C.

7.      By letter dated November 1, 2018, OIP provided a final response to Plaintiff's

request, which, in part, contained records located by OIP as part of a supplemental search which

was conducted subsequent to the remediation of a technical issue previously disclosed to

Plaintiff.  Pursuant to this response, OIP provided to Plaintiff 2,440 additional pages containing

records responsive to its request, some with excisions made pursuant to Exemptions 5 and 6 of

the FOIA, 5 U.S.C. § 552(b)(5) and (b)(6).  A copy of OIP's final response letter is attached

hereto as Exhibit D.

8.      Following OIP's final response to Plaintiff, events occurred pertaining to the

Special Counsel's investigation such that there no longer existed a basis for the assertion of a

withholding pursuant to Exemption 7(A).  On April 8, 2018, OIP released in part one page, with

---

[1] As indicated in paragraph 8, this page was subsequently released in part.

excisions made pursuant to Exemptions 6 and 7(C).  This page had previously been withheld in full pursuant to Exemption 7(A), in conjunction with Exemptions 6 and 7(C).  In this response, OIP also provided Plaintiff with revised copies of five pages that had previously contained inconsistent redactions.  OIP's letter to Plaintiff accompanying its April 8, 2018 response is attached hereto as Exhibit E.

## II.    OIP'S SEARCH FOR RESPONSIVE RECORDS

### A.    OIP's Standard Search Methods

9.    OIP processes FOIA requests on behalf of itself, six senior leadership offices within the Department of Justice, and the Special Counsel's Office.  Upon receipt of a FOIA request, OIP makes determinations both as to the appropriate offices in which to conduct an initial records search and as to the records repositories and search methods to use in conducting records searches on behalf of the six senior leadership offices or the Special Counsel's Office. OIP bases its assessment of where responsive records are likely maintained on a review of the content of the request itself and the nature of the records sought, as well as OIP's familiarity with the types and location of records that each senior leadership office maintains, discussions with knowledgeable personnel in the senior leadership offices or elsewhere in the Department, and additional research OIP staff may conduct on the topic of the request to assist with its assessment.

10.    In order to ensure a reasonably thorough records search, during the course of processing any given FOIA request, OIP continually assesses what staff members' records to search, both with respect to current and former employees, and whether OIP should use any supplemental or alternative search methods (such as targeted inquiries to knowledgeable office staff regarding the existence of records not identified via "keyword" searches) to locate

potentially responsive records.  OIP then initiates such additional searches and methods as

appropriate.  OIP's assessment is based on our review of records located in the initial records

searches, discussions with Department or other Executive Branch personnel, and any other

pertinent factors considered by OIP.  In sum, OIP records searches are agile and comprehensive,

and the various search steps employed by OIP work in tandem to achieve a complete records

search.

      11.     When searching the records of office custodians identified as having potentially

responsive material, OIP staff employ any one of a variety of search methods, or a combination

of methods, depending on the nature of the specific request and the type of records systems

implicated.  Potentially responsive records may be located in unclassified or classified email

systems, computer hard drives (electronic documents) and/or hard copy (paper) files, and OIP

takes all reasonable steps to locate responsive material across locations.

      12.     As relevant here, when OIP searches unclassified email records and computer

hard drives, OIP uses a sophisticated electronic system that remotely searches through a given

custodian's entire email collection and hard drive to isolate and locate potentially responsive

records within that collection of electronic records, using search parameters that are provided by

OIP staff.  This same system then serves as the review platform by which OIP staff review the

records retrieved using those initial search parameters.  This platform allows broad search terms

to be used initially and then for OIP staff to run more targeted, secondary searches within the

gathered universe to identify records responsive to each request.  If and when secondary searches

are conducted, the parameters used are based on a variety of factors, including keywords/search

terms and contextual or background information provided in the request letter, topical research

conducted on the request subject, discussions with knowledgeable officials within the

Department, and on OIP's review of the initial search results which allows OIP to identify common terms and phrasing that is actually employed by records custodians on the topic of the request. This two-tiered search approach leverages the technological advancements of the electronic search and review system and, by enabling a broad initial search followed by a focused secondary search, allows OIP staff to conduct thorough, precise, and informed searches of unclassified email systems.

**B.      OIP's Searches Conducted in Response to Plaintiff's Request**

13.      Upon review of Plaintiff's request, OIP searched for potentially responsive records within two Offices:  PAO and SCO.  Plaintiff's request specifically sought records from SCO, and OIP determined that PAO, the office tasked with coordinating relations of DOJ with the news media, was the only other office reasonably likely to also possess records responsive to Plaintiff's request.  In order to capture all potentially responsive records, OIP conducted broad searches of unclassified email records and computer hard drives for seventeen custodians across these Offices (fifteen within PAO and two within SCO).[2]

1. Search of PAO and SCO Email and Hard Drives

14.      OIP initiated its search efforts for PAO on March 19, 2018, and for SCO on March 20, 2018.  OIP identified fifteen PAO custodians who, based on their positions within PAO, were reasonably likely to have communicated with the media.  Specifically, OIP included

---

[2] Based on the nature of Plaintiff's request, which seeks communications only between the Defendants and the media, *see* Exhibit A, OIP reasonably limited its search to unclassified records.  Moreover, OIP did not search hard-copy/paper files, as none were identified during the course of OIP's search efforts.

as custodians those individuals in PAO who held the positions of Director, Deputy Director, Public Affairs Specialist, Digital Engagement Manager, or Press Assistant.[3]

15.   OIP also identified two custodians within the SCO likely to have responsive records.  Both of these SCO custodians were public affairs professionals responsible for communications with the media, and both were on detail from other DOJ components—one from PAO and the other from the United States Attorney's Office for the Eastern District of Virginia (EDVA).  OIP searched the SCO email accounts of both of these individuals.[4]  In addition to these two records custodians, OIP searched SCO's general press inquiries mailbox: Specialcounselpress@usdoj.gov.

16.   For PAO, the initial search parameters used were the date range of July 1, 2015 through December 31, 2017, based on Plaintiff's own proposed start date and cut-off dates.  For SCO, the initial search parameters included all emails from the date the email accounts were created through December 31, 2017.

17.   The search terms that OIP used for both PAO and SCO were as follows:  "SCO," "OSC," "Special Counsel," or "Mueller" combined with the terms "Russia*," "Trump Campaign," "Trump Presidential Campaign," or "Trump Transition."  These initial searches gathered a broad set of records from across the entire collection of email and computer files for the relevant custodians.

---

[3] OIP determined that individuals in PAO with the positions of Speech Writers, Confidential Assistants, and Office Managers would not likely communicate with the media and did not search these individuals' records.
[4] The PAO detailee's PAO email account was also searched as part of OIP's search of PAO, and OIP confirmed with the EDVA detailee that any SCO-related emails were forwarded to his SCO account.

18.     After learning of a technical issue affecting the data against which these searches were run, OIP worked closely with its electronic search support team in the Justice Management Division's (JMD) Office of the Chief Information Officer (OCIO) to re-run the above searches. *See* Klimavicz Declaration, ECF No. 20-2.  With regard to the re-run electronic searches in PAO and SCO, JMD used the parameters described above for the same custodians.  This re-run search gathered additional records from across the entire collection of email and computer files for the relevant custodians.

2. Search of PAO and SCO Text Messages

19.     During the course of its work, OIP learned that potentially responsive text message records existed within PAO.  OIP initiated its text message search efforts on June 4, 2018.  OIP worked with its point of contact in PAO, who conducted a manual review of text message conversations belonging to the custodians reasonably likely to have potentially responsive text messages.  This entailed reading through the custodian's text conversations with those persons they would be reasonably likely to discuss this topic with, including reporters and other DOJ staff.  The PAO point of contact read through each individual text message within these parameters to assess their responsiveness to Plaintiff's request.  Moreover, the PAO point of contact also canvassed other PAO staff to inquire whether any of those individuals may have potentially responsive text messages – all of whom responded in the negative.

20.     OIP also learned that potentially responsive text message records existed within SCO.  Search efforts for those texts were initiated on May 24, 2018.  OIP worked with its points of contact in SCO, who coordinated a manual review of the text message conversations belonging to the SCO custodian believed to reasonably be likely to have potentially responsive text messages.  SCO's primary public affairs official reviewed each of his text messages and

located those text messages that were communications with members of the media and concerned SCO matters.  SCO's back-up public affairs official indicated to OIP that he had not communicated via text message with any members of the media concerning SCO matters.

21.     In total, as a result of these email, hard drive, and text message searches, OIP located a large number of potentially responsive records, and after a manual review of each record, determined that 3,441 pages contained records responsive to Plaintiff's request.  After re-running the searches as a result of a technical issue, OIP located an additional 2,440 pages containing records responsive to Plaintiff's request.

### C.     Summary and Adequacy of OIP's Records Searches

22.     In sum, the searches conducted for this request fully reflect the agile, dynamic, and comprehensive search process OIP conducts in response to FOIA requests.  In this case, OIP conducted an initial search for records that refer or relate to "communications to and from the media, domestic and foreign, concerning the activities of Special Counsel Robert Mueller and/or his staff as well as the Federal Bureau of Investigation, concerning the investigation of alleged Russian collusion and related matters concerning the Trump Presidential Campaign and the Trump Transition Team with the print, internet, social media and radio and television networks." The timeframe of this initial search for documents was July 1, 2015 through December 31, 2017 based on the timeframe provided in Plaintiff's request.  The scope of that search included, as appropriate, searches of the unclassified email and hard drives of seventeen identified officials (fifteen in PAO and two in SCO), as well as SCO's general press inquiries mailbox, to locate records responsive to Plaintiff's request.  When OIP initiated its electronic searches, OIP also informed each of its client Offices about this FOIA request and requested that its points of contact in each Office inform OIP of any additional records that may exist and that would

otherwise not have been captured by OIP's search.  Upon examination of the initial search results, OIP determined that text messages potentially responsive to Plaintiff's request might exist.  OIP followed this lead and initiated further discussions with its points of contact in PAO and SCO, who conducted additional searches for potentially responsive text messages, which also resulted in additional records being processed and released to Plaintiff.

23.     Additionally, upon review of the initial search results, OIP located instances of SCO custodians, other than those included in the initial search, forwarding contacts from the press to the SCO public affairs professionals whose mailboxes were included in the search.  OIP followed this lead and engaged in additional discussions with SCO.  As a result of these discussions, OIP learned that SCO instituted a procedure whereby all SCO staff were directed to forward any press inquiries to the two SCO public affairs professionals.  This procedure involved SCO staff forwarding, to the two SCO public affairs professionals, any email they received from a member of the press, as well as memorializing any telephone inquiries they received in emails and forwarding them also.  Based on these discussions and OIP's review of the initial search results which confirmed this procedure was being followed, OIP determined that a search of the two SCO public affairs professionals, as well as the SCO's general press inquiries mailbox, was reasonable and adequate and no additional searches were needed.  Further, OIP routinely engaged with its client Offices to confirm the results of its searches.

24.     Upon learning that a technical issue may have affected the searches conducted in response to this request, OIP had discussions with relevant staff in DOJ as to the scope of the technical issue, and determined that additional searches were necessary in response to Plaintiff's request.  Through these subsequent electronic searches, supplementary records were located and

processed for release to Plaintiff.  Further, OIP routinely engaged with its client offices to confirm the results of its searches.

25.     Based on my experience with the Department, my familiarity with the records maintained by the leadership offices, discussions with knowledgeable staff, as well as my understanding of the scope of Plaintiff's request, and information gathered from the documents themselves, I aver that OIP's searches were reasonably calculated to uncover all potentially responsive records and that all files likely to contain relevant documents were searched.

## III.     EXPLANATION OF WITHHELD MATERIAL

26.     Of the 5,880 pages OIP has provided to plaintiff, 1,941 pages have been released in part, with redactions made pursuant to Exemptions 5, 6, and/or 7(C).  The remaining 3,939 pages were released to Plaintiff in full, without redactions.

27.     Attached to this declaration is a Vaughn Index containing detailed descriptions of the records withheld in part.  This Vaughn Index includes the following information for each record withheld in part:  Bates Numbers (corresponding to copies of the records as released to Plaintiff); Date; Sender/Recipient/Subject; Description of Withheld Material; Exemption(s); and Pages.  OIP's Vaughn Index is attached hereto as Exhibit F.

28.     Of the 1,941 pages withheld in part by OIP, one page contains redactions made pursuant to Exemptions 6 and 7(C) of the FOIA.  This page contains an email that consists of information provided by a member of the news media that the sender believed could be helpful to the SCO's investigation.  The remaining 1,940 pages withheld in part by OIP contain redactions made pursuant to Exemptions 5 and/or 6 of the FOIA.

29.     For clarity of presentation and discussion, OIP has organized the withheld information into "document categories" which are keyed to the individual records listed on the

OIP <u>Vaughn</u> Index.  The designated document categories and applicable FOIA

exemptions/privileges for each document category are as follows:

> <u>Documents Released in Part</u> (1,941 pages)

- *Internal Deliberative Discussions Regarding Press Coverage and Press Inquiries*:  Exemption 5 (3 pages) [Section A of <u>Vaughn</u> Index]
- *Internal Deliberative Notes Regarding Press Coverage and Press Inquiries*: Exemptions 5 (113 pages) [Section A of <u>Vaughn</u> Index]
- *Activities and Details of a Purely Personal Nature*: Exemption 6 (109 pages) [Section B of <u>Vaughn</u> Index]
- *Information Identifying Individuals Not Officially Confirmed to be with SCO*: Exemption 6 (8 pages) [Section B of <u>Vaughn</u> Index]
- *Personal information considered by reporter concerning third party that was not reported*: Exemption 6 (3 pages) [Section B of <u>Vaughn</u> Index]
- *Information Identifying and/or about a Third Party or Third Parties*: Exemption 6 (10 pages) [Section B of <u>Vaughn</u> Index]
- *Information concerning prior (pre-SCO) contacts between DOJ officials and reporters*: Exemption 6 (3 pages) [Section B of <u>Vaughn</u> Index]
- *Phone and Email Contact Information and DOJ Employees' Identities*: Exemption 6
  - Third Party Contact Information (1450 pages) [Section D of <u>Vaughn</u> Index]
  - DOJ Employee Contact Information and Identities (284 pages) [Section E of <u>Vaughn</u> Index]
- *Information Provided by a Member of the News Media that Sender Believed Could be Helpful to SCO's Investigation*: Exemptions 6, and 7(C) (1 page) [Section C of Vaughn Index]
- *Non-responsive Record Markings*: (42 pages) [Section F of <u>Vaughn</u> Index]
- *Duplicative Record Markings*: (5 pages) [Section G of <u>Vaughn</u> Index]

The justifications for each of these withholdings are described in detail below.

**A.   Information Withheld in Part Pursuant to Exemption 5**

30.    OIP withheld 116 pages in part pursuant to Exemption 5.  All reasonably

segregable, nonexempt information from these records was disclosed to Plaintiff.

31.     Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  As discussed in detail below, all of the information withheld by OIP pursuant to Exemption 5 is protected in part pursuant to the deliberative process privilege.

       1.      Inter-/Intra-Agency Threshold

32.     In order to withhold records from release pursuant to Exemption 5 of the FOIA, the records must be inter- or intra-agency records.  Here, all information withheld from Plaintiff pursuant to this exemption consists of communications and "Weekly Press Reports" generated by, exchanged within, and wholly internal to, the DOJ.  As such, they are "inter-/intra-agency" documents within the threshold of FOIA Exemption 5.

       2.      Deliberative Process Privilege

33.     OIP has protected information, in part, within the following records categories pursuant to the deliberative process privilege: (1) "Deliberative Discussions Regarding Press Coverage and Press Inquiries," and (2) "Deliberative Notes Regarding Press Coverage and Press Inquiries."

34.     The deliberative process privilege is intended to protect the decision-making process of government agencies from public scrutiny in order to enhance the quality of agency decisions.  To be protected by the deliberative process privilege, the information at issue must be both "pre-decisional" and "deliberative."  If pre-decisional, deliberative communications were to be routinely released to the public, Department employees would be much more cautious in their discussions with each other and in providing all pertinent information and viewpoints to agency decision-makers in a timely manner.  This lack of candor would seriously impair the

Department's ability to foster forthright, internal discussions necessary for efficient and proper Departmental decision-making.

>  i.  *"Deliberative Discussions Regarding Press Coverage"*

*35.*  The withholdings categorized in OIP's <u>Vaughn</u> Index as "Deliberative Discussions Regarding Press Coverage" consist of internal Department emails discussing press inquiries.  This category of records consists of internal email communications from SCO staff to SCO's public affairs officials providing press inquiries sent directly to them and noting preliminary thoughts on if and how the SCO might respond.  In each instance, SCO staff are reacting in real time, sharing their opinions and suggestions for how to the SCO might respond to particular press inquiries.

36.  The material withheld in this category of records is pre-decisional because it was drafted antecedent to the finalization of the Department's responses to media inquiries and press interactions discussed therein.  All of the information protected within these emails is also deliberative, because it consists of evaluative discussion and preliminary assessments by attorneys and other staff regarding matters in which they analyze, make recommendations, give advice, and work toward formulating strategies for final agency action and response.

>  ii.  *"Deliberative Notes Regarding Press Coverage and Press Inquiries"*

37.  The withholdings categorized in OIP's <u>Vaughn</u> Index as "Deliberative Notes Regarding Press Coverage and Press Coverage" consist of internal notes of press contacts maintained by the SCO public affairs officials.  This category consists of 113 pages of notes in a "Weekly Press Report" maintained by SCO's public affairs officials to document and aid determinations as to whether and how to address press inquiries.  Specifically, this weekly log consists of a chart with seven columns that documents the following: (1) date of the press

inquiry; (2) the media outlet; (3) the name of the reporter; (4) the method of contact; (5) the subject of the inquiry; (6) research – which documents steps taken in preparation of a response, if any; and (7) a proposed final response to that inquiry.  In separate charts, the reports also document public statements SCO has made beyond "no comment" and selected publications SCO public affairs officials identified for the purpose of briefing leadership.

38.     Certain deliberative information was withheld in part from the "Weekly Press Report" under Exemption 5 within the "research" and "final response" columns.  The information withheld consists of the public affairs officials' notes of what steps should be taken in order to develop a final response, if any.  Specifically, within the "final response" column, the information withheld consists of additional research done and facts regarded as pertinent in developing a recommended final response.  Despite the naming of this column, the information within it does not consist of final responses to the press inquiries but rather, recommendations regarding a potential response.  Additionally, certain information was redacted in both the "research" and "final response" columns where it revealed which press inquiries were selected for briefing and notice to SCO officials and management.  Similarly, OIP also redacted selected stories that were identified by the SCO public affairs officials for briefing SCO staff and leadership.  These deliberative notes attempt to succinctly summarize particular events, identify important issues, and provide key background information in a concise summary format for ease of understanding and presentation.  The authors review the universe of facts and possible issues arising on the topic at hand, and then select facts and issues they deem most important for senior SCO staff review and to provide the necessary background information.  The decision to include or exclude certain factual information located in the course of their research or in preparing a final response is itself an important part of the deliberative process.  Furthermore, the

15

compilation of this factual information, and the exclusion of other factual information, is, in and of itself, a necessary part of the deliberative and pre-decisional stage.

39.     The material withheld in this category of records is pre-decisional because it consists of notes and selected facts concerning certain media inquiries and publications that were antecedent to determinations made by SCO as to how to respond to the press inquiries or whether to take any further action that may be necessary.  The withheld material is deliberative because it contains the public affairs official's research and notes used during the decision-making process as they work towards finalizing a response to a particular press inquiry.

3.     Releasing this Withheld in Part Material Would Harm the Deliberative Process

40.     In sum, the above-listed withheld-in-part records categories pertain to entirely internal pre-decisional notes and emails among SCO staff.  Protected portions of these records reflect proposed actions provided to the SCO public affairs officials by SCO staff regarding how to respond to press inquiries, notes on research and steps taken in the SCO's preparation for responding to media inquiries, and selected media inquiries and publications flagged for awareness and determinations on whether any further actions may be necessary.

41.     Were this type of material to be released, Department employees would become reticent to document notes of their internal decision-making processes, to share their opinions, and they would be circumspect in their willingness to engage in internal discussions with other employees.  Disclosure of such preliminary assessments and opinions would make officials contributing to pre-decisional deliberations much more cautious in providing their views.  This lack of candor would seriously impair the Department's ability to foster the forthright internal discussions necessary for efficient and proper decision-making.  Certainly, the strength of final agency decisions would be diminished if the Department could no longer rely on a robust, pre-

decisional, and deliberative process where employees feel free to keep notes to assist their decision-making process and share their preliminary assessments and the selective facts that contribute to their own unique ideas and perspectives.  Agency decision-making is at its best when employees are able to focus on the substance of their views and not on whether their views or pre-decisional notes may at some point be made publicly available.

4.      OIP Released all Reasonably Segregable, Non-Exempt Information

42.      OIP conducted a thorough, good faith, line-by-line review of the "Weekly Press Report" and each of the email records it released in part and released all reasonably segregable, non-exempt information contained within them.  Under Exemption 5, OIP withheld from disclosure only that information which would reveal the Department's pre-decisional, decision-making process—specifically, those portions of the emails that would reveal preliminary thoughts on if and how SCO should respond to media inquiries, as well as those portions of the "Weekly Press Reports" that were used to brief SCO staff and make determinations on if and how to react to certain media inquiries and publications.

43.      OIP's decision to release other portions of these records, as well as its decision to release preceding or subsequent email records in full further demonstrates its efforts to segregate this material.  Within these materials, OIP released final press statements and final responses to press inquiries.  OIP released incoming press inquiries and comments, and OIP released subsequent external conversations with the press.  OIP often divided paragraphs to release those parts that contained non-deliberative, factual information.  Additionally, with respect to the "Weekly Press Report," OIP segregated for release portions of the "research" column where the media inquiries concerned reporters asking to be added to SCO's media list, cancellation of meeting invites, the correct pronunciation of the name of a publicly confirmed SCO official, and

how to submit a FOIA request.  Finally, OIP released the entire portions of the "Weekly Press

Report" addressing final public statements made by SCO beyond "no comment."

**B.      Information Withheld Pursuant to Exemption 6**

44.      OIP withheld 1,865 pages in part pursuant to Exemption 6.  All reasonably

segregable, nonexempt information from these records were disclosed to Plaintiff.

45.      FOIA Exemption 6 protects information about individuals in "personnel and

medical files and similar files" when the disclosure of such information "would constitute a

clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

46.      When determining whether to withhold information pursuant to Exemption 6, OIP

balances the privacy interests of individuals identified in records against any "FOIA public

interest" in disclosure of that information.  In making this analysis, the FOIA public interest

considered in the balance is limited to information which would shed light on the Department's

performance of its mission: to enforce the law and defend the interests of the United States

according to the law; to ensure public safety against threats foreign and domestic; to provide

federal leadership in preventing and controlling crime; to seek just punishment for those guilty of

unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.

1.      <u>Types of Withheld Material</u>

47.      OIP withheld the following categories of information pursuant to Exemption 6:

(1) "Activities and Details of a Purely Personal Nature"; (2) "Information Identifying Individuals

Not Officially Confirmed to be with SCO"; (3) "Personal Information Considered by Reporter

Concerning Third Party that was not Reported"; (4) "Information Identifying and/or about a

Third Party or Third Parties"; (5) Third Party Contact Information"; (6) "DOJ Employee Contact

Information and Identities"; and (7) "Information Concerning Prior (pre-SCO) Contacts Between

DOJ Officials and Reporters."  For each of the categories of information withheld pursuant to

18

Exemption 6, OIP determined that there were individuals who had a substantial privacy interest in the information withheld and that there was either no—or at most a *de minimis*—public interest that would be served by the release of that  information.  The analysis for each of the above-referenced Exemption 6 withholding categories is addressed below.

<em>i.        Activities and Details of a Purely Personal Nature</em>

48.    The withholdings categorized in OIP's <u>Vaughn</u> Index as "Activities and Details of a Purely Personal Nature" consists of personal travel plans, religious observances, personal activities and other purely personal details pertaining to third parties, reporters, or Department employees not related to their official capacity.  Generally, types of information withheld included vacation details, holiday plans, personal relationships, and other private third-party information unrelated to any Government function or activity.  In assessing the FOIA public interest in disclosure personal details in documents in this category OIP is unable to identify any FOIA public interest in disclosure of this information.  On the other hand, there is a clear privacy interest in the details of an individual's personal life.  Such details shed no light on the Government's activities but only on the personal lives of private citizens or citizens who happen to also work for the Government.  This privacy interest, coupled with the lack of any FOIA public interest, clearly warrants protection of this information pursuant to Exemption 6.

<em>ii.       Information Identifying Individuals Not Officially Confirmed to be<br>with SCO</em>

49.    The withholdings categorized in OIP's <u>Vaughn</u> Index as "Information Identifying Individuals Not Officially Confirmed to be with SCO" consists of reporter-supplied speculation as to the identities of, and information about, individuals not confirmed to be employed by the SCO.  In order to withhold information pursuant to Exemption 6, a balancing of the privacy interest of the individuals mentioned in these records against any public interest in disclosure

19

must weigh in favor of non-disclosure.  The high profile and contentious nature of the work of the SCO has led to much speculation as to the staffing decisions of the SCO, some of it inaccurate.  On the one hand, disclosure of the identities of SCO employees whose identities are not public, could seriously prejudice their effectiveness in conducting investigations to which they are assigned and subject them to unwarranted harassment.  On the other hand, if the individuals inquired about by a reporter do not in fact work for SCO, disclosure of their identities and other information could still subject them to unwarranted harassment and prejudice their effectiveness as they are sought out and asked if they were approached by the SCO and, if so, why they ended up not working for the SCO.  Furthermore, releasing the names of these individuals would not aid the public's understanding of how the Department carries out its duties.  I have therefore determined that the privacy interests of third parties not officially confirmed to be with SCO outweigh the public interest in the disclosure of the names of those individuals.

> iii.  *Information Identifying and/or About a Third Party or Third Parties*

50.     The withholdings categorized in OIP's Vaughn Index as "Information Identifying a Third Party or Third Parties" consists of information pertaining to third parties not connected to the SCO, including images of individuals, third-party (not associated with SCO) political contributions, personal relationships or connections to Department employees, or reporter-supplied allegations of a third party's connections to the SCO's investigations.  As noted above, in order to withhold information pursuant to Exemption 6, a balancing of the privacy interest of the individuals mentioned in these records against any public interest in disclosure must weigh in favor of non-disclosure.  In these instances, reporters are attempting to parlay their associations with Department employees or other private citizens as an avenue of access to the SCO, or to

speculate as to a third parties' relationship to the SCO's investigations.  Given the politically

charged environment surrounding the SCO's work as well as the speculation and scrutiny that

occurs when any new fact or allegation is made public, disclosure of this information relating to

third parties, whose sole public connection to the work of the SCO consists of reporters'

unproven efforts, would certainly subject these individuals to unwarranted harassment.  Nor

would this disclosure aid the public's understanding of how the Department carries out its duties.

I have therefore determined that the privacy interests of these third parties outweigh the public

interest in the disclosure of the names of those employees.

> *iv.*     *Additional Personal Information Considered by Reporter*
> *Concerning Third Party that was Not Reported*

51.     The withholdings categorized in OIP's <u>Vaughn</u> Index as "Personal Information

Considered by Reporter Concerning Third Party that was Not Reported" consists of information

supplied by reporters to SCO public affairs personnel regarding third parties but that which was

not subsequently reported on.  As noted above, in order to withhold information pursuant to

Exemption 6, a balancing of the privacy interest of the individuals mentioned in these records

against any public interest in disclosure must weigh in favor of non-disclosure.  In these

instances, in the course of their reporting, journalists developed information of uncertain veracity

concerning third parties which they sent to the SCO while soliciting SCO comment.  Similarly,

given the politically charged environment surrounding the SCO's work as well as the rampant

speculation and scrutiny that occurs when any new fact or allegation is made public, disclosure

of this information, developed by journalists, relating to third parties, whose sole connection to

the work of the SCO consists of a reporter's email, would certainly subject these individuals to

unwarranted harassment.  Nor would this disclosure aid the public's understanding of how the

Department carries out its duties.  I have therefore determined that the privacy interests of these third parties outweigh the public interest in the disclosure of the names of those employees.

> v.    *Phone and Email Contact Information and DOJ Employees' Identities*

52.    The withholdings categorized in OIP's <u>Vaughn</u> Index in Section D as "Third Party Contact Information" and Section E as "DOJ Employee Contact Information and Identities" consist of the personal email accounts and cell phones of reporters, third parties, and the official email accounts and telephone numbers of SCO employees, as well as in some cases the identities of employees in the SCO and other law enforcement personnel.  In each instance where phone and email contact information was withheld from plaintiff pursuant to Exemption 6, OIP determined that the individual's privacy interests were not outweighed by any FOIA public interest in disclosure of that information.  The release of personal email addresses, cell phone numbers, and contact information of third parties, including members of the press, as well as DOJ employees, would not aid the public's understanding of how the Department carries out its duties, and only some direct contact information was protected.  On the other hand, the release of such information could subject those individuals to unwarranted harassment in their personal time and personal lives, and as such the release of such information would "constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6).  For reference, the Index lists each page on which OIP withheld contact information in Sections D & E.  For both cell phone numbers and email addresses, a balancing analysis between the public interest in disclosure and personal privacy interests favor the withholding of such information pursuant to Exemption 6.

53.    Additionally, the names and identifying information, including contact information of certain employees of the SCO and of law enforcement employees have been withheld by OIP pursuant to Exemption 6.  Releasing the names and identifying information of

law enforcement personnel would and could reasonably be expected to "constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6).  For reference, the Index lists each page on which OIP withheld the names and identifying information, including contact information of certain employees of the SCO and of law enforcement employees in Sections E. Considering the sensitive and often contentious nature of the work of the SCO, as well as the work law enforcement personnel conduct, disclosure of their identities could seriously prejudice their effectiveness in conducting investigations to which they are assigned and subject them to unwarranted harassment.  Furthermore, releasing the names of law enforcement personnel would not aid the public's understanding of how the Department carries out its duties.  I have therefore determined that the privacy interests of the SCO employees,' as well as the law enforcement employees,' outweigh the dearth of public interest in the disclosure of the names of those employees.

vi.    *Information Concerning Prior (pre-SCO) Contacts Between DOJ Officials and Reporters*

54.    The withholdings categorized in OIP's <u>Vaughn</u> Index as "Information Concerning Prior (pre-SCO) Contacts Between DOJ Official and Reporters" reflect SCO officials' prior (pre-SCO) associations with members of the news media seeking comment regarding SCO matters. The SCO officials have a substantial privacy interest in this information.  The information consists only of additional personal details about their prior interaction with a member of the news before their work at the SCO.  There is, at most, only a *de minimis* public interest in knowing about pre-SCO interactions between an SCO official and a member of the news media, and that *de minimis* interest is outweighed by the privacy interest of the SCO official's personal details remaining protected, because disclosure of this information—which amounts to only personal anecdotes—would not shed light on the Department's work.  I have therefore

23

determined that the privacy interests of the SCO officials outweigh the only *de minimis* public interest in the disclosure of their prior contacts with members of the news media.

### 2.   Segregation of Nonexempt Information

55.     With respect to all of the withholdings described above, OIP has made every effort to release all segregable information to plaintiff without invading on the interests that the relevant exemptions were designed to protect.  To that end, OIP conducted a line-by-line review of the responsive documents to determine in good faith what material should be released consistent with FOIA's requirements.  There is no additional, non-exempt information that can be segregated for release to Plaintiff.

### C.   Information Withheld Pursuant to Exemptions 6 and 7(C)

56.     OIP released in part one page with portions redacted pursuant to Exemptions 6 and 7(C) to protect an individual's personal privacy.

### 1.   Threshold Exemption (b)(7) Requirements

57.     FOIA Exemption 7 exempts from mandatory disclosure records or information "compiled for law enforcement purposes" when disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption.  5 U.S.C. § 552(b)(7).  Because the one page that was released in part consisted of information provided by a member of the news media that it believed could be helpful to SCO's investigation, this communication was clearly compiled for a law enforcement purpose.  Accordingly, I have determined that the information contained in this record was "compiled for law enforcement purposes," and thus meets the threshold of Exemption 7.

### 2.   Exemption 7(C)

58.     OIP asserted Exemption 7(C), in conjunction with Exemption 6, to protect the name and identifying information of a member of the news media who offered to provide

information to SCO that the individual believed potentially relevant to SCO's investigation. Information provided by individuals concerning ongoing investigations is a productive investigative tool utilized by law enforcement agencies.  The largest roadblock to successfully obtaining the desired information is the fear of an individual that his or her identity could possibly be exposed and, he or she could consequently be harassed, intimidated or threatened with legal or economic reprisal, or possible physical harm.  If the individual's identity were released, other potential sources could believe that any contacts they made with investigators to provide what they believed to be pertinent information could also be made public.  The continued access to persons willing to assist in law enforcement investigations by providing pertinent factual information without invasions to their privacy outweighs any public benefit that could be derived from the disclosure of the identity of this individual.  Furthermore, there is no legitimate public interest to be served by releasing the identity of this individual who sought to provide information to SCO.

3.     Segregation of Non-Exempt Information

59.     With respect to all of the withholdings described above, OIP has made every effort to release all segregable information to plaintiff without invading on the interests that the relevant exemptions were designed to protect.  To that end, OIP conducted a line-by-line review of the responsive documents to determine in good faith what material should be released consistent with FOIA's requirements.  There is no additional, non-exempt information that can be segregated for release to Plaintiff.

IV.     **NON-RESPONSIVE AND DUPLICATIVE RECORDS**

60.     Once OIP determined that a record was responsive, OIP did not withhold any information within that record unless OIP was authorized to do so pursuant to one or more

statutory exemptions provided by the FOIA.  OIP did not process any records that it determined

to be non-responsive or duplicative.  When a non-responsive or duplicative record appeared on a

separate PDF page, OIP removed that PDF page entirely.  When OIP's search software tools

formatted separate records onto the same PDF page, and non-responsive or duplicative records

shared a PDF page with responsive records, OIP marked non-responsive and duplicative records

accordingly and did not process them.  OIP also reviewed each entry in the Weekly Press Report

that was processed as a separate and distinct record and marked one entry as non-responsive

because it was communication from a private individual citizen and not media.  The Index

contains a list of the non-responsive and duplicate markings made by OIP in Sections F and G,

respectively.

     61.    OIP carefully reviewed the material it located in its initial searches and looked for

a clear break in the material in order to determine where one record ended and the next began.

OIP determined that each responsive letter, email, text message, or Weekly Report log entry, was

an independent record for multiple reasons.  First, Plaintiff requested communications with the

media by the Special Counsel's Office on specified subject matters, and some of the individual

text messages and emails OIP reviewed were unrelated to emails or texts that appeared earlier or

later in a thread or in a PDF page.  OIP further observed that each letter, email, or text message

was a distinct record, whether it was initiating a conversation or responding to a previous record

of communication, because each message constituted a discrete package of information, with a

unique header and date- or time-stamp.  Although modern technologies depart from the

traditional letter practice of dividing each record of communication onto a separate page, OIP

determined that each email or text message record was no less distinct than each letter it

reviewed.  OIP also determined that each log entry in the Weekly Report was a distinct record as each entry concerned a discreet and unique media interaction or communication.

62.    By treating each individual letter, email, text message, and log entry as a distinct record, OIP is able to more efficiently process FOIA requests especially to the extent that responsive records require consultation with other equity holders.  Even accounting for the time it takes to identify records within a given document and to apply non-responsive redactions, this process is still far more efficient because the alternative—processing non-responsive records— would implicate multiple layers of unnecessary review.

63.    OIP recognizes that when individuals communicate by letter, email, or text message, each record may provide context for other records sent in response, and vice versa.  For example, in some circumstances, a response may incorporate by reference information from a previous record.  However, in other circumstances, especially in the context of email or text message, a subsequent record may be completely unrelated to prior records or may relate only to portions thereof.  Therefore, when OIP conducted its responsiveness review in this case, we paid close attention to any previous or subsequent letters, emails, or text messages in a chain in order to understand each record in context and to ensure that it did not overlook responsive records that would have otherwise appeared to be non-responsive out of context.  Where neither the content of a record itself, nor the context of prior or subsequent records indicated that a record was responsive, OIP removed that record as non-responsive and did not process that record.

I declare under penalty of perjury that the foregoing is true and correct.


_____
Vanessa R. Brinkmann
Senior Counsel


Executed this 8th day of April 2019.

# Exhibit A

# FAX COVER SHEET

| TO | Laurie Day |
|---|---|
| COMPANY | Office of Information Policy |
| FAX NUMBER | 12025141009 |
| FROM | Larry Klayman |
| DATE | 2018-01-03 00:29:25 GMT |
| RE | Freedom of Information Act Request |

## COVER MESSAGE

Attached is a request made under the Freedom of Information Act by Freedom Watch, Inc., through its chairman and general counsel, Larry Klayman. The request is eight (8) pages in length, including one exhibit labeled as "Exhibit A."

RECEIVED

**JAN 0 3 2018**

Office of Information Policy



# FREEDOM WATCH

▷ www.FreedomWatchUSA.org

▷ **World Headquarters** 2020 Pennsylvania Avenue, N.W., Suite 345, Washington, DC 20006-1811   ▷ (310) 595-0800   ▷ leklayman@gmail.com

January 2, 2018

VIA FASCIMILE, FEDEX AND MAIL

Robert Mueller, Esq.
Special Counsel
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Suite 3266
Washington, D.C. 20530

Laurie Day
Chief, Initial Request Staff
Office of Information Policy
U.S. Department of Justice
1425 New York Avenue, N.W., Suite 11050
Washington, DC 20530-0001
Fax: (202) 514-1009

FOIA/PA Mail Referral Unit
U.S. Department of Justice
LOC Building, Room 115
Washington, DC 20530-0001
Fax: (202) 616-6695

Ms. Amanda Marchand Jones
Chief, FOIA/PA Unit
Criminal Division
U.S. Department of Justice
Keeney Building, Suite 1127
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Fax: (202) 514-6617

Federal Bureau of Investigation
Attn: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA, 22602
Fax: (540) 868-4391

Re:    <u>Freedom of Information Act Request</u>

Dear Ladies and Gentlemen:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and regulations promulgated thereunder, we hereby request from the Office of Special Counsel Robert Mueller, the U.S. Department of Justice (DOJ) upon which his authority and mandate rests and depends, and DOJ's Federal Bureau of Investigation, any and all documents that refer or relate in any way to the specific request set forth below.

Freedom Watch requests expedited processing of this request pursuant to 28 C.F.R. § 16.5 (e) of the regulations governing the the requestees' operations because time is of the essence in the events at issue for public knowledge of the nation's citizens.

Freedom Watch requests that you provide the requested documents within ten (10) calendar days of receipt of this request.

## FREEDOM OF INFORMATION REQUESTS

For the purpose of this Freedom of Information Act Request (FOIA Request), you must consider and comply with this request in good faith and in a timely matter.  Please note that a document that has been altered with the addition of handwritten notes or other information added is not the same document as the unaltered original.

### Definitions

For the purpose of this FOIA request the term "document" is hereby defined expansively to include any or all of the following, whether existing as electronic, digital, or computer data, in electronic or digital form, or in paper form:  correspondence, letters, memoranda, recommendations, records, orders, plans, proposals, meeting agendas, minutes of meetings, briefing materials, progress reports, weekly reports, talking points, briefing papers, requests for action, telephone logs, telephone message books, notes of phone messages or visits, routing slips, buck slips, standard government forms containing information filled in on lines or blank spaces, slide presentations, "card decks" (for presentations at meetings), power-point presentations, facsimiles (faxes), notes, handwritten notes, notes to the file, requests for decision, requests for authorization, tape recordings, video recordings, electronic mail (email) messages, summaries, briefs, orders, written decisions, applications, , and/or other documents and things.  In addition, with regard to payments to persons or vendors, documents also include all invoices, bills, contracting records, commitment of funds, obligation of funds, or disbursement records.

For the purposes of this FOIA request, you are to search and produce any responsive documents or records that are within the U.S. Department of Justice's possession, custody, or control regardless of who authored or created the document or record.

Freedom of Information Act Request:  Robert Mueller News Contacts                     Page | 3

For the purposes of this FOIA request, the term "communication" includes any form of communication, such as by letter, by facsimile, by note, by telephone text message, by electronic mail (email), computer messaging service, or by any other means.

The time period for records that we request is records created on or after July 1, 2015, through December 31, 2017.

For identification purposes, the Robert Mueller referred to herein is also known as Robert Swan Mueller III, an American lawyer who was the sixth Director of the Federal Bureau of Investigation, serving from September 4, 2001, to September 4, 2013, and was appointed a Special Counsel on or about May 17, 2017.  For ease of your reference, a copy of Robert Mueller's appointment is attached as Exhibit A.

Requests

Request #1                 Any and all documents and records as defined and set forth above that refer or relate with regard to communications to and from the media, domestic and foreign, concerning the activities of Special Counsel Robert Mueller and/or his staff as well as the Federal Bureau of Investigation, concerning the investigation of alleged Russian collusion and related matters concerning the Trump Presidential Campaign and the Trump Transition Team with the print, internet, social media and radio and television networks including but not limited to: New York Times, The Washington Post, Los Angeles Times, Politico, The Daily Beast, Slate, Huffington Post, Associated Press, Reuters, MSNBC, NBC, ABC, CBS, CNN, The Hill, Mother Jones, New Republic, McClatchy, and any other media outlets, where they be print, radio, social media television or other media.

**LEGAL GUIDELINES**

In accordance with FOIA and its regulations, policies and precedents directing that the FOIA focuses on information, not only documents, we request maximum disclosure of information and documents, including any segregable portions of documents if some portions are withheld due to a claim of privilege or exemption.

If any documents are withheld subject to any claim of privilege or exemption, we request complete information about each document withheld, including which paragraph of the request to which the document is responsive; the author and title of the document; an explanation of the applicability of the claimed exemption to the contents of the document; and the name and title of each person responsible for the denial.

Freedom of Information Act Request:  Robert Mueller News Contacts                Page | 4

Furthermore, as to any claim that documents will be withheld on the basis of any deliberative process privilege we draw your attention to the legal requirements that the deliberative process exemption does not permit withholding of --

    (a) facts which are segregable from deliberations
    (b) opinions about such facts which merely convey or further describe factual information;
    (c) any deliberations unrelated to any actual decision;
    (d) any deliberations in areas where there are allegations of governmental misconduct, and
    (e) deliberations, opinions, or recommendations that are incorporated into a final decision and/or which serve to explain a final decision by the government.

We therefore demand production of all documents in unredacted form notwithstanding any possible claim of the deliberative process exemption or any other claimed exemption.

## REQUEST FOR FEE WAIVER

The requesters also respectfully request a blanket fee waiver on behalf of the public interest, to which it is entitled under 5 U.S.C. § 552(a)(4)(A); *see also, Larson v. Central Intelligence Agency*, 843 F.2d 1482, 1483 (D.C. Cir. 1988); *National Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1385-87 (D.C. Cir. 1989); *see also, Judicial Watch, Inc. v. United States Dep't. of Commerce*, No. 95-0133 (D.D.C. May 16, 1995) (order granting Judicial Watch USA, Inc.'s request for fee waiver with regard to all responsive documents in proceeding).

Requester Freedom Watch USA, Inc. is a non-profit, non-partisan, tax-exempt 501(c)(3) organization which as a public interest organization which specializes in deterring, monitoring, uncovering, and addressing public corruption in government. Freedom Watch USA has and will hold Republicans, Democrats, and Independents equally accountable to ethical and legal standards for honest and open government. It disseminates information, as is its mission, to the public through its website at www.freedomwatchusa.org, press releases, seminars and speeches, the radio show of its chairman and general counsel, Larry Klayman (see www.radioamerica.org or www.freedomwatchusa.org), You Tube, Roku, Amazon Fire, Twitter, and appearances on other radio shows and cable news networks such as Fox News, One America Network, i 24,  and Newsmax.com. Freedom Watch's chairman and general counsel, Larry Klayman, also has published a weekly column at www.wnd.com and has a blog named "Klayman's Court" at Newsmax.com, among other forms of public dissemination of information to educate the citizenry.

The requesters have no commercial purpose as a 501(c)(3) non-profit organization organized exclusively to improve the ethical and legal standards in government, accountability of government officials to the rule of law, and public understanding of government operations.

Freedom Watch thus will also use the requested material to promote accountable government as a representative of the news media and the public in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(II) and *National Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1385-87 (D.C. Cir. 1989), by disseminating relevant information which may be uncovered.  Information will benefit the public by identifying areas for future reform as well as deterring future abuses that could otherwise proliferate without scrutiny.

The subject of this request is information concerning the operations and activities of the government.   Past experience of demonstrates the success of Freedom Watch in uncovering important facts about government activities, integrity and operations, of broad concern to the public.  This request is likely to "contribute significantly" to the public's understanding of the operations of their government, satisfying the requirements of FOIA fee waiver provisions.

Immediate release of the requested information is in the public interest, including for promoting confidence in an honest democratic system, and furthering the integrity of the American national government by deterring and/or sanctioning corrupt activities.   The failure to do so will likely result in the further compromise of important interests of the American people.

## REQUEST FOR EXPEDITED PROCESSING

Freedom Watch hereby requests expedited processing of this request pursuant to 5 U.S.C. § 552(a)(6)(E)(ii)(I), as there is a compelling need for this information and time is truly of the essence in this matter. *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 614-16 (D.C. Cir. 1976) (holding that requests that involved a far greater degree of urgency than others should be processed out of turn).

This request is extremely urgent, as the investigation by Special Counsel Robert Mueller is currently ongoing, and there are new leaks emerging from his office nearly every single day, which is harming the reputation and livelihoods of a number of people that are under investigation and, as importantly, as well as the reputation, integrity and the public's trust of the justice system. The American people therefore need this information urgently, and given Freedom Watch's role in disseminating information, as set forth above, expedited processing of this instant request is the best avenue for the release of this information to the masses and citizenry. Particularly since Special Counsel Robert Mueller has assembled a large team and spent nearly $7 million in the first five months, there is therefore no reason that they cannot produce the requested documentation within 10 calendar days, and it is clear that there is no  reason for delay particularly since the DOJ and its Federal Bureau of Investigation have literally thousands of employees and have claimed a high priority to expediting the conclusion of Special Counsel Mueller's investigation in the nation's interest.

In sum, there is therefore a great urgency to inform the public, pursuant to *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001) and relevant regulations, policies and case

Freedom of Information Act Request:  Robert Mueller News Contacts          Page | 6

law, as the request clearly concerns a matter of current exigency to the American public. Special Counsel Mueller's investigation is ongoing, and is being conducted using a significant amount of taxpayer money. The information and documents sought needs to be presented and disseminated to the public forthwith. Any delay would further damage the reputations of the people under investigation and, as importantly, the remaining confidence that the American people have in the justice system.

Pursuant to U.S.C. §552(a)(6)(E), the foregoing is true and correct to the best of Freedom Watch's knowledge and belief.

Sincerely,

Larry Klayman, Esq.
Freedom Watch, Inc.
2020 Pennsylvania Ave, N.W., Suite 345
Washington, D.C. 20006
Tel: 310 595 0800
leklayman@gmail.com

Chairman and General Counsel

PLEASE SEND TRUE COPIES OF THE REQUESTED DOCUMENTS WITH 10 CALENDAR DAYS BY EXPRESS MAIL, AS DEFINED HEREIN, TO THE ABOVE ADDRESS.

# EXHIBIT A



### Office of the Deputy Attorney General
#### Washington, D.C. 20530

## ORDER NO. 3915-2017

### APPOINTMENT OF SPECIAL COUNSEL
### TO INVESTIGATE RUSSIAN INTERFERENCE WITH THE
### 2016 PRESIDENTIAL ELECTION AND RELATED MATTERS

By virtue of the authority vested in me as Acting Attorney General, including 28 U.S.C. §§ 509, 510, and 515, in order to discharge my responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of the Russian government's efforts to interfere in the 2016 presidential election, I hereby order as follows:

(a)    Robert S. Mueller III is appointed to serve as Special Counsel for the United States Department of Justice.

(b)    The Special Counsel is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including:

   (i)    any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and

   (ii)    any matters that arose or may arise directly from the investigation; and

   (iii)    any other matters within the scope of 28 C.F.R. § 600.4(a).

(c)    If the Special Counsel believes it is necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters.

(d)    Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.

5/17/17
Date

Rod J. Rosenstein
Acting Attorney General

# Exhibit B



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

February 20, 2018

Mr. Larry Klayman
Freedom Watch, Inc.
Suite 345                                        Re:    DOJ-2018-001793 (OIP)
2020 Pennsylvania Avenue NW                              DOJ-2018-002230 (PAO)
Washington, DC 20006                                     1:18-cv-00088
leklayman@gmail.com                                      DRC:JRS

Dear Mr. Klayman:

    This is to acknowledge receipt of your Freedom of Information Act (FOIA) request
dated January 2, 2018 and received in this Office on January 3, 2018 in which you requested
communications with the media concerning the investigation and activities of Special Counsel
Robert Mueller. This response is made on behalf of the Office of Public Affairs and the
Special Counsel's Office.

    You have requested expedited processing of your request and I have determined that
your request for expedited processing should be granted. Your request has been assigned to
the expedited track and will be processed as soon as practicable. We have not yet made a
decision on your request for a fee waiver. We will do so after we determine whether fees will
be assessed for this request.

    If you have any questions regarding this response, please contact Joseph Dugan of the
Department's Civil Division, Federal Programs Branch, at (202) 514-3259.

                                        Sincerely,

                                        *Daniel Castellano*

                                        Daniel R. Castellano
                                        Senior Attorney

# Exhibit C



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

September 4, 2018

Mr. Larry Klayman
Freedom Watch, Inc.
Suite 345                                    Re:   DOJ-2018-001793 (OIP)
2020 Pennsylvania Avenue NW                          DOJ-2018-002230 (PAO)
Washington, DC  20006                                D.D.C. No. 18-0088
leklayman@gmail.com                                  VRB:TAZ:JRS

Dear Mr. Klayman:

        This is an interim response to your Freedom of Information Act (FOIA) request dated
January 2, 2018, and received in this Office on January 3, 2018, in which you requested
communications with the media concerning the investigation by and activities of Special
Counsel Robert Mueller.  This response is made on behalf of the Offices of the Special
Counsel (SCO) and Public Affairs (PAO).

        Please be advised that searches have been conducted on behalf of SCO and PAO.  At
this time, 3,441 pages containing records responsive to your request have been located.  I have
determined that 3,440 pages are appropriate for release with certain excisions made pursuant
Exemptions 5 and 6 of the FOIA, 5 U.S.C. § 552(b)(5) and (b)(6), and copies are enclosed.
Additionally, one page is being withheld in full pursuant to Exemptions 6, 7(A), and 7(C) of
the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(A), and (b)(7)(C).  Exemption 5 pertains to certain
inter- and intra-agency communications protected by the deliberative process privilege.
Exemption 6 pertains to information the release of which would constitute a clearly
unwarranted invasion of the personal privacy of third parties.  Exemption 7(A) pertains to
records or information compiled for law enforcement purposes, the release of which could
reasonably be expected to interfere with enforcement proceedings.  Exemption 7(C) pertains to
records or information compiled with law enforcement purposes, the release of which could
reasonably be expected to constitute an unwarranted invasion of the personal privacy of third
parties.  Please note that the enclosed pages contain some records that are not responsive to
your request.  Those records have not been processed, and are marked accordingly.  Moreover,
some of the enclosed records contain highlighting which was present on the records as located,
and were not made pursuant to our FOIA review.

        As you are aware, since completing these searches, OIP was informed of technical
issues, which may have affected the searches conducted in response to your request.  These
issues are not specific to your request.  We cannot provide you with a final response to your
request until the technical issues are resolved.  OIP has been working closely with our
electronic search support team to resolve these issues, and we will provide an update on the
status of their remedial search efforts by September 12, 2018.

-2-

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c) (2012 & Supp. V 2017). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions regarding this response, please contact Joseph Dugan of the Department's Civil Division, Federal Programs Branch, at (202) 514-3259.

Sincerely,

Vanessa Brinkmann
Senior Counsel

Enclosures

# Exhibit D



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

November 1, 2018

Mr. Larry Klayman
Freedom Watch, Inc.
Suite 345
2020 Pennsylvania Avenue NW
Washington, DC  20006
leklayman@gmail.com

Re:   DOJ-2018-001793 (OIP)
        DOJ-2018-002230 (PAO)
        D.D.C. No. 18-0088
        VRB:TAZ:JRS

Dear Mr. Klayman:

        This is the final response to your Freedom of Information Act (FOIA) request dated January 2, 2018, and received in this Office on January 3, 2018, in which you requested communications with the media concerning the investigation by and activities of Special Counsel Robert Mueller.  This response is made on behalf of the Offices of the Special Counsel (SCO) and Public Affairs (PAO).

        As we previously advised, supplemental searches were conducted on behalf of SCO and PAO as a result of technical issues in the initial searches.  These supplemental searches resulted in 2,440 pages containing records responsive to your request being located.  I have determined that 2,440 pages are appropriate for release with certain excisions made pursuant Exemptions 5 and 6 of the FOIA, 5 U.S.C. § 552(b)(5) and (b)(6), and copies are enclosed.  Exemption 5 pertains to certain inter- and intra-agency communications protected by the deliberative process privilege.  Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties.  Please note that the enclosed pages contain some records that are not responsive to your request.  Those records have not been processed, and are marked accordingly.

        For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c) (2012 & Supp. V 2017). This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

        If you have any questions regarding this response, please contact Bradley Humphreys of the Department's Civil Division, Federal Programs Branch, at (202) 305-0878.

Sincerely,

Vanessa Brinkmann
Senior Counsel

Enclosure

# Exhibit E



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

April 8, 2019

Larry Klayman
Freedom Watch, Inc.
Suite 345                                          Re:      DOJ-2018-001793 (OIP)
2020 Pennsylvania Avenue NW                              DOJ-2018-002230 (PAO)
Washington, DC  20006                                    D.D.C. No. 18-0088
leklayman@gmail.com                                      VRB:TAZ:SJD

Dear Larry Klayman:

　　　This is a supplemental response to your Freedom of Information Act (FOIA) request
dated January 2, 2018, and received in this Office on January 3, 2018, in which you requested
communications with the media concerning the investigation by and activities of Special
Counsel Robert Mueller.  This response is made on behalf of the Offices of the Special
Counsel (SCO) and Public Affairs (PAO).

　　　We provided you with an interim response on September 4, 2018 and a final response
on November 1, 2018.  Subsequent to our final response of November 1, 2018, events
transpired that allow for the release of additional material which was previously withheld
pursuant to Exemption 7(A).  Please find enclosed one revised page, Bates Stamped 20181087-
000731, which is now appropriate for release with excisions made pursuant to Exemptions 6
and 7(C) of the FOIA, 5 U.S.C. § 552(b)(6) and (b)(7)(C).  Exemption 6 pertains to
information the release of which would constitute a clearly unwarranted invasion of the
personal privacy of third parties.  Exemption 7(C) pertains to records or information compiled
for law enforcement purposes, the release of which could reasonably be expected to constitute
an unwarranted invasion of the personal privacy of third parties.

　　　Additionally, we noticed that certain pages within the material released to you as part
of our two productions contained minor inconsistencies in some of the redactions.  Attached,
please find five pages that have been re-processed for consistency.  Below is a summary of the
re-processing and where this material was previously released to you:

| Bates Stamp | Alteration for consistency | Where previously released |
|---|---|---|
| 20181087-002564 | Release of name | Released elsewhere within same record |
| 20181087-004808 | Release of sentence fragment | Released within 20181087-002753 |
| 20181087-004812 | Release of sentence fragment | Released within 20181087-004533 |

-2-

| 20181087-005443 | Release of sentence fragment | Released within 20181087-002753 |
| 20181087-005447 | Release of sentence fragment | Released within 20181087-004533 |

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c) (2012 & Supp. V 2017). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions regarding this response, please contact Bradley Humphreys of the Department's Civil Division, Federal Programs Branch, at (202) 305-0878.

Sincerely,

Vanessa Brinkmann
Senior Counsel

Enclosures

**Carr, Peter (OPA)**

| | |
|---|---|
| **From:** | Carr, Peter (OPA) |
| **Sent:** | Tuesday, July 11, 2017 9:48 PM |
| **To:** | PAC |
| **Subject:** | Fwd: Fake news investigation |

Begin forwarded message:

> **From:** (b) (6), (b) (7)(C)
> **Date:** July 11, 2017 at 7:24:32 PM EDT
> **To:** <Peter.Carr@usdoj.gov>
> **Subject: Fake news investigation**
>
> Dear Peter,
>
> 

**EBP**

| | |
|---|---|
| **From:** | EBP |
| **Sent:** | Monday, November 27, 2017 9:28 AM |
| **To:** | PAC |
| **Subject:** | FW: Marie Claire |

Hi Peter,

I hope you had a great Thanksgiving! I wasn't sure if you saw this e-mail, so I thought I'd resend in case you have any guidance on how my (b) (6) hould respond to this press inquiry from a reporter for Marie Claire.

Thanks,
Elizabeth

NOTICE: This email (including any attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If you are not the intended recipient (or the recipient's agent), you are hereby notified that any dissemination, distribution, copying, or use of this email or its contents is strictly prohibited. If you received this email in error, please notify the sender immediately and destroy all copies.

**From:** Elizabeth Prelogar [mailto:(b) (6)
**Sent:** Sunday, November 26, 2017 12:40 PM
**To:** EBP <(b) (6)
**Subject:** Fwd: Marie Claire

Sent from my iPhone

Begin forwarded message:

> **From:** Elizabeth Prelogar <(b) (6)                    >
> **Date:** November 22, 2017 at 8:36:13 PM EST
> **To:** PAC@usdoj.gov
> **Subject: Fwd: Marie Claire**
>
> Hi Peter,
>
> I received this email from (b) (6)              (b) followed up with another email to
> say the reporter is named Dana Liebelson. Any thoughts on the right way to respond?
>
> I hope you have a great Thanksgiving!
> Elizabeth
>
> Sent from my iPhone
>
> Begin forwarded message:

Thanks for reaching out earlier.


I have more detailed information about the April DC meeting.  It was on or around April 11, and included at least four AP reporters w/Weissmann, FBI agents, and prosecutors on Manafort case.   (Chad Day, Jack Gillum, Ted Bridis, Eric Tucker)


An FBI agent wrote up notes, and forwarded to their supervisor.  A Justice Department official has filed a complaint (b) (6)


Can we speak later today?   Before 130 or after 430.

Thank you for the help and consideration.

Catherine


From: Herridge, Catherine
Sent: Tuesday, November 07, 2017 3:11 PM
To: 'SpecialCounselPress' <SpecialCounselPress@usdoj.gov>
Subject: RE: follow up -- Fox Query


Peter,


Would we talk between 330 and 4

Or after 430?


Catherine


From: SpecialCounselPress [mailto:SpecialCounselPress@usdoj.gov]
Sent: Monday, November 06, 2017 6:21 PM
To: Herridge, Catherine <Catherine.Herridge@FOXNEWS.COM>
Subject: Re: follow up -- Fox Query


Yes, my day is flexible tomorrow. 11 works or later if needed. My desk number is 202 514-2172.

We understand the leak came from grand jury proceedings in the Eastern District of New York related to Manafort in late Spring - possibly March - before SC was appointed.

An FBI agent filed a complaint "electronically" with HQ alleging a leak of grand jury matters by Andrew Weissman to the media  - we believe the AP.

We were told the complaint went to (b) (6)

Sent from my iPhone

On Oct 25, 2017, at 12:49 PM, Herridge, Catherine <Catherine.Herridge@FOXNEWS.COM> wrote:

I got hung up yesterday late, and will get something to you later today.

Thank you for following up.

From: SpecialCounselPress [mailto:SpecialCounselPress@usdoj.gov]
Sent: Wednesday, October 25, 2017 9:12 AM
To: Herridge, Catherine <Catherine.Herridge@FOXNEWS.COM>
Subject: RE: Fox News Query

If you can please send me something in writing about what we discussed yesterday, that'd be helpful. Want to make sure I have the latest version of the allegation correct before checking into this again.

From: Herridge, Catherine [mailto:Catherine.Herridge@FOXNEWS.COM]
Sent: Tuesday, October 24, 2017 3:55 PM
To: SpecialCounselPress <SpecialCounselPress@jmd.usdoj.gov>
Subject: RE: Fox News Query

Peter,

I have gathered additional information about the topic.

Can we discuss before COB today?

Thanks for considering

Catherine

From: SpecialCounselPress [mailto:SpecialCounselPress@usdoj.gov]
Sent: Monday, November 20, 2017 11:59 AM
To: Herridge, Catherine <Catherine.Herridge@FOXNEWS.COM>
Subject: RE: follow up -- Fox Query/new information on timing, participants


Thanks for the call. Just a reminder to send whatever questions you'd like us to respond to in writing. I'll raise them with leadership and get back to you.


-Peter


From: Herridge, Catherine [mailto:Catherine.Herridge@FOXNEWS.COM]
Sent: Monday, November 20, 2017 11:25 AM
To: SpecialCounselPress <SpecialCounselPress@jmd.usdoj.gov>
Subject: RE: follow up -- Fox Query/new information on timing, participants


Peter –


Thanks for reaching out earlier.


I have more detailed information about the April DC meeting.  It was on or around April 11, and included at least four AP reporters w/Weissmann, FBI agents, and prosecutors on Manafort case.   (Chad Day, Jack Gillum, Ted Bridis, Eric Tucker)


An FBI agent wrote up notes, and forwarded to their supervisor.  A Justice Department official has filed a complaint (b) (6)


Can we speak later today?   Before 130 or after 430.

Thank you for the help and consideration.

Catherine


From: Herridge, Catherine
Sent: Tuesday, November 07, 2017 3:11 PM
To: 'SpecialCounselPress' <SpecialCounselPress@usdoj.gov>
Subject: RE: follow up -- Fox Query

Sent: Sunday, October 29, 2017 9:35 PM
To: SpecialCounselPress <SpecialCounselPress@jmd.usdoj.gov>
Subject: Fox News Query - additional information

Peter,

Additional information on original query is below.

Our question: Is the Special Counsel confident that Andrew Weissmann has not been a source for the media, or leaked through a third party?

Many thx

Catherine

We understand the leak came from grand jury proceedings in the Eastern District of New York related to Manafort in late Spring - possibly March - before SC was appointed.

An FBI agent filed a complaint "electronically" with HQ alleging a leak of grand jury matters by Andrew Weissman to the media  - we believe the AP.

We were told the complaint went to (b) (6)

Sent from my iPhone

On Oct 25, 2017, at 12:49 PM, Herridge, Catherine <Catherine.Herridge@FOXNEWS.COM> wrote:

I got hung up yesterday late, and will get something to you later today.

Thank you for following up.

From: SpecialCounselPress [mailto:SpecialCounselPress@usdoj.gov]
Sent: Wednesday, October 25, 2017 9:12 AM
To: Herridge, Catherine <Catherine.Herridge@FOXNEWS.COM>

# Exhibit F

<u>Freedom Watch, Inc. v. Robert S. Mueller III & U.S. Dep't of Justice,</u>
Civil Action No. 18-cv-00088
U.S. District Court for the District of Columbia


Office of Information Policy (OIP) <u>Vaughn</u> Index


This index contains a description of the 1,941 pages of records withheld in part by OIP, pursuant to Freedom of Information Act (FOIA) Exemption 5 (deliberative process privilege), Exemption 6 (personal privacy), and Exemption 7(C) (personal privacy).[1]   For clarity of presentation, the records in this <u>Vaughn</u> Index are keyed to document categories which are discussed in detail in the accompanying declaration.  The descriptions of each record within this <u>Vaughn</u> Index are meant to be read in tandem with the OIP declaration, which provides a more fulsome explanation of the basis for withholding the information at issue.  The document categories are as follows:

**<u>Documents Released in Part</u>:**

Exemption 5 Withholding Categories:
  *Internal Deliberative Discussions Regarding Press Coverage and Press Inquiries* [Section A]
  *Internal Deliberative Notes Regarding Press Coverage and Press Inquiries* [Section A]
Exemption 6 Withholding Categories:
  *Activities and Details of a Purely Personal Nature* [Section B]
  *Information Identifying Individuals Not Officially Confirmed to be with SCO* [Section B]
  *Personal Information Considered By Reporter Concerning Third Party That Was Not Reported* [Section B]
  *Information Identifying and/or About a Third Party or Third Parties* [Section B]
  *Information Concerning Prior (pre-SCO) Contacts Between DOJ Officials and Reporters* [Section B]
  *Third Party Contact Information* [Section D]
  *DOJ Employee Contact Information and Identities* [Section E]
Exemption 6 and 7(C) Withholding Category:
  *Information Provided by a Member of the News Media that Sender Believed Could be Helpful to SCO's Investigation* [Section C]
Other Markings:
  *Non-Responsive Record Markings* [Section F]
  *Duplicative Record Markings* [Section G]

---

[1] As described in the accompanying declaration, subsequent to OIP's final response, events transpired pertaining to the Special Counsel's investigation such that there no longer existed a basis for the assertion of a withholding pursuant to Exemption 7(A).  On April 8, 2018 OIP released in part one formerly withheld-in full page, with excisions made, in part, pursuant to FOIA Exemptions 6 and 7(C).

This <u>Vaughn</u> Index will use acronyms when referring to the components and offices of the Department of Justice (DOJ):  the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Public Affairs (PAO), and Special Counsel's Office (SCO).

**A.  DOJ Office of Information Policy, Records Released-in-Part, Pursuant to Exemption 5**

| Bates Numbers | Date | Record Sender/Recipient/Subject | Description of Withheld Material | Exemption(s) | Pages |
|---|---|---|---|---|---|
| 20181087-000333 | 6/22/17 | **To:** PAC **From:** ASJZ **Subject:** New Job | *Internal Deliberative Discussions Regarding Press Coverage and Press Inquiries* | Exemption 5: Deliberative Process Privilege | 1 (partial) |
| 20181087-001642 | 9/20/17 | **To:** PAC **From:** ACJ **Subject:** Voicemail from reporter | *Internal Deliberative Discussions Regarding Press Coverage and Press Inquiries* | Exemption 5: Deliberative Process Privilege | 1 (partial) |
| 20181087-003326 through 20181087-003441 | July 19 through December 29, 2017 | **Weekly Press Report** | *Internal Deliberative Notes Regarding Press Coverage and Press Inquiries* | Exemption 5: Deliberative Process Privilege | 113 (partials) |
| 20181087-003807 | 6/12/17 | **To:** PAC **From:** AAW **Subject:** media request - article | *Internal Deliberative Discussions Regarding Press Coverage and Press Inquiries* | Exemption 5: Deliberative Process Privilege | 1 (partial) |

**B.  DOJ Office of Information Policy, Records Released-in-Part, Pursuant to Exemption 6**

| Bates Numbers | Date | Record Sender/Recipient/Subject | Description of Withheld Material | Exemption(s) | Pages |
|---|---|---|---|---|---|
| 20181087-000086; 20181087-003621 | 5/17/17 | **To:** Matt Zapotosky **From:** Sarah Isgur Flores **Subject:** waiver of ethics rules? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000248 | 12/5 | Sarah Isgur Flores Text Message | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000285 | 12/8 | Sarah Isgur Flores Text Message | *Information Identifying Individuals Not Officially Confirmed to be with SCO* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-000334 | 6/22/17 | **To:** Christopher Peak<br>**From:** Aaron Zelinsky<br>**Subject:** New Job | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-000374 | 6/27/17 | **To:** Del Wilber<br>**From:** SpecialCounselPress<br>**Subject:** | *Information Identifying Individuals Not Officially Confirmed to be with SCO* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000383 | 6/28/17 | **To:** SpecialCounselPress<br>**From:** Del Wilber<br>**Subject:** coffee this afternoon? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000395 | 6/27/17 | **To:** SpecialCounselPress<br>**From:** David Rohde<br>**Subject:** Meeting Request – Friday 6/30 | *Information Concerning Prior (pre-SCO) Contacts Between DOJ Officials and Reporters* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000402 | 7/1/17 | **To:** Matt Zapotosky<br>**From:** SpecialCounselPress<br>**Subject:** Just Confirming… | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000415 | 7/3/17 | **To:** Del Wilber<br>**From:** SpecialCounselPress<br>**Subject:** Re: Where/when should I meet you today? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000436 | 7/5/17 | **To:** SpecialCounselPress<br>**From:** Ryan Reilly<br>**Subject:** RE: Special Counsel Budget | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000692 | 7/10/17 | **To:** SpecialCounselPress<br>**From:** Andres, Triay<br>**Subject:** checking in | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000755 | 7/14/17 | **To:** Evan Perez<br>**From:** SpecialCounselPress<br>**Subject:** RE: Peter I have a query | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000794 | 7/19/17 | **To:** Stephanie Kirchgaessner<br>**From:** 20181087-000792<br>**Subject:** urgent question for story | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000795 | 7/19/17 | **To:** Ben Jacobs<br>**From:** SpecialCounselPress<br>**Subject:** just checking for comment on POTUS' statement to NYT about investigation | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-000796 | 7/19/17 | **To:** Evan Perez **From:** SpecialCounselPress **Subject:** Comment request | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-000797 | 7/19/17 | **To:** Chris Geidner **From:** SpecialCounselPress **Subject:** Any comment on tonight's NYT Trump interview? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000798 | 7/19/17 | **To:** Josh Gerstein **From:** SpecialCounselPress **Subject:** NYT article | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000799 | 7/19/17 | **To:** Sari Horwitz **From:** SpecialCounselPress **Subject:** NYT Story | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000801 | 7/19/17 | **To:** Jordan Fabian **From:** SpecialCounselPress **Subject:** POTUS statements on Special Counsel Mueller | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000802 | 7/19/17 | **To:** Jack V. Date **From:** SpecialCounselPress **Subject:** Any response to NYT story? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000803 | 7/19/17 | **To:** Andres Triay **From:** SpecialCounselPress **Subject:** Nyt pres trump interview | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000804 | 7/19/17 | **To:** Andres Triay **From:** SpecialCounselPress **Subject:** Nyt pres trump interview | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000805 | 7/20/17 | **To:** Bulletin Intelligence **From:** PAC **Subject:** Automatic Reply: Special Counsel's Office News Briefing for Thursday, July 20 2017 | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000808 | 7/20/17 | **To:** SpecialCounselPress **From:** Aruna Viswanatha **Subject:** comment on President Trump's comments re special counsel | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-000808 | 7/20/17 | **To:** Aruna Viswanatha **From:** SpecialCounselPress **Subject:** comment on President Trump's comments re special counsel | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-000818 | 7/20/17 | **To:** Natalie Sherman **From:** SpecialCounselPress **Subject:** BBC re: Deutsche Bank/investigation | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000822 | 7/20/17 | **To:** Matt Apuzzo **From:** SpecialCounselPress **Subject:** Seeking comment for tonight | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000822 | 7/20/17 | **To:** SpecialCounselPress **From:** Matt Apuzzo **Subject:** Seeking comment for tonight | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000822 | 7/20/17 | **To:** Matt Apuzzo **From:** SpecialCounselPress **Subject:** Seeking comment for tonight | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000830 | 7/21/17 | **To:** SpecialCounselPress **From:** Eamon Javers **Subject:** Oppo? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000838; 20181087-000843 | 7/20/17 | **To:** Peter Nicholas **From:** SpecialCounselPress **Subject:** Query from Wall Street Journal | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000840 | 7/21/17 | **To:** Demetri Sevastopulo **From:** SpecialCounselPress **Subject:** Re: | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000856 | 7/21/17 | **To:** Massimo Calabresi **From:** SpecialCounselPress **Subject:** TIME Cover: Securing the vote | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000858 | 7/21/17 | **To:** Julia Ainsley **From:** SpecialCounselPress **Subject:** Comment for Reuters story | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-000860 | 7/21/17 | **To:** Matthew Alexander<br>**From:** SpecialCounselPress<br>**Subject:** Q from The Rachel Maddow Show | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-000866 | 7/24/17 | **To:** Nick Schifrin<br>**From:** SpecialCounselPress<br>**Subject:** PBS NewsHour introductions | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000870 | 7/17/17 | **To:** SpecialCounselPress<br>**From:** Alastair Sloan<br>**Subject:** Wanted to confirm whether [b(6)] got hired by SCO? | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000871 | 7/17/17 | **To:** SpecialCounselPress<br>**From:** Alastair Sloan<br>**Subject:** | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000880 | 7/17/17 | **To:** SpecialCounselPress<br>**From:** Greg Farrell<br>**Subject:** Bloomberg News Story on Special Counsel's investigation | *Information Identifying Individuals Not Officially Confirmed to be with SCO* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000881 | 7/20/17 | **To:** Gregg Farrell<br>**From:** SpecialCounselPress<br>**Subject:**  Bloomberg News Story on Special Counsel's investigation | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000909 | 8/2/17 | **To:** Andres Triay<br>**From:** SpecialCounselPress<br>**Subject:** New hire | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000915 | 8/2/17 | **To:** Dylan Tokar<br>**From:** SpecialCounselPress<br>**Subject:** Greg Andres | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000916 | 8/2/17 | **To:** Dylan Tokar<br>**From:** Peter Carr<br>**Subject:** Automatic Reply: Greg Andres | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000926 | 7/31/17 | **To:** Eric Williamson<br>**From:** SpecialCounselPress<br>**Subject:** Request for interview, UVA Lawyer magazine | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-000953 | 8/3/17 | **To:** SpecialCounselPress<br>**From:** David Lynch<br>**Subject:** comment? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-000953 | 8/3/17 | **To:** David Lynch<br>**From:** SpecialCounselPress<br>**Subject:** comment? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000953 | 8/3/17 | **To:** SpecialCounselPress<br>**From:** David Lynch<br>**Subject:** comment? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000961 | 8/3/17 | **To:** Tierney Sneed<br>**From:** SpecialCounselPress<br>**Subject:** Press inquiry: Grand Jury | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000970 | 8/3/17 | **To:** Todd Ruger<br>**From:** SpecialCounselPress<br>**Subject:** Reconnecting | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-000977 | 8/3/17 | **To:** Geneva Sands<br>**From:** SpecialCounselPress<br>**Subject:**  ABC News - question | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001065 | 8/10/17 | **To:** Gregg Farrell<br>**From:** SpecialCounselPress<br>**Subject:** today's story. . . | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001073 | 8/10/17 | **To:** SpecialCounselPress<br>**From:** Kelly Cohen<br>**Subject:** comment for story | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001119 | 8/16/17 | **To:** SpecialCounselPress<br>**From:** Sarah N. Lynch<br>**Subject:** coffee catchup? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001152 | 8/22/17 | **To:** Pete Williams<br>**From:** SpecialCounselPress<br>**Subject:** Checking in | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001153 | 8/22/17 | **To:** Pete Williams<br>**From:** Joshua Stueve<br>**Subject:** Checking in | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001159; 20181087-001163 | 8/23/17 | **To:** Betsy Woodruff<br>**From:** SpecialCounselPress<br>**Subject:** Quick fact check q | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-001344 | 9/8/17 | **To:** Andrew Beatty<br>**From:** SpecialCounselPress<br>**Subject:** WH interviews | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-001458 | 9/14/17 | **To:** Greg Farrell<br>**From:** SpecialCounselPress<br>**Subject:** Bloomberg story on 'adoption' meeting involving Donald Trump Jr. | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001471 | 9/14/17 | **To:** Andres Triay<br>**From:** SpecialCounselPress<br>**Subject:** Ironbridge | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001539; 20181087-001540 | 9/18/17 | **To:** SpecialCounselPress<br>**From:** Carrie Johnson<br>**Subject:** quick q, not urgent | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001540 | 9/18/17 | **To:** Carrie Johnson<br>**From:** SpecialCounselPress<br>**Subject:** quick q, not urgent | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001604 | 9/20/17 | **To:** Josh Gerstein<br>**From:** SpecialCounselPress<br>**Subject:** Mueller's team interviewed Rosenstein over the summer | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001606 | 9/20/17 | **To:** SpecialCounselPress<br>**From:** Betsy Woodruff<br>**Subject:** Can you give me a ring? | *Personal Information Considered By Reporter Concerning Third Party That Was Not Reported* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001632 | 9/20/17 | **To:** PAC<br>**From:** ASJZ<br>**Subject:** Call from Matt Zapotosky | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001639 | 9/20/17 | **To:** Kevin Johnson<br>**From:** SpecialCounselPress<br>**Subject:** Peter and Josh | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001717 | 9/28/17 | **To:** Darren Samuelsohn<br>**From:** SpecialCounselPress<br>**Subject:** Can you please give me a ring Peter, today or Thurs? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-001730; 20181087-001754 | 9/29/17 | **To:** SpecialCounselPress<br>**From:** Kelly Cohen<br>**Subject:** coffee | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-001741 | 9/29/17 | Attachment to email 20181087-001740<br>**To:** John Gerstein<br>**From:** SpecialCounselPress<br>**Subject:** Latest photo | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001789 | 10/6/17 | **To:** Eric Tucker<br>**From:** SpecialCounselPress<br>**Subject:** Budget | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-001873 | 10/23/17 | **To:** SpecialCounselPress<br>**From:** Brooke Singman<br>**Subject:** Fox News request – Investigating Podesta Group, Tony Podesta | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002127 | 10/30/17 | **To:** SpecialCounselPress<br>**From:** Henry Rodgers<br>**Subject:** Confirmation RE Paul Manafort Alexandria Rug Dealings | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002290 | 11/1/17 | **To:** SpecialCounselPress<br>**From:** Matt Flegenheimer<br>**Subject:** NYT article/Andrew Weissmann | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| | | | | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-002306; 20181087-002364; 20181087-002510; 20181087-002531; 20181087-002755; 20181087-004553; 20181087-004812; 20181087-005447 | 10/29/17 | **To:** SpecialCounselPress **From:** Catherine Herridge **Subject:** Fox News Query – additional information | *Personal Information Considered By Reporter Concerning Third Party That Was Not Reported* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002363; 20181087-002509; 20181087-002530; 20181087-002754; 20181087-004551; 20181087-004810; 20181087-005445 | 11/4/17 | **To:** Catherine Herridge **From:** SpecialCounselPress **Subject:** Fox News Query – additional information | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002416 | 11/9/17 | **To:** SpecialCounselPress **From:** Allegra Kirkland **Subject:** TPM request for comment on Corey Lewandoski contact with special counsel | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002426 | 11/10/17 | **To:** Josh Gerstein **From:** SpecialCounselPress **Subject:** Sorry I missed your call | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| | | | | | |
|---|---|---|---|---|---|
| 20181087-002448 | 11/13/17 | **To:** SpecialCounselPress<br>**From:** Josh Gerstein<br>**Subject:** Passage in SCO Manafort bail filing last week | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002508;<br>20181087-002529;<br>20181087-002753;<br>20181087-004808;<br>20181087-005443 | 11/20/17 | **To:** SpecialCounselPress<br>**From:** Catherine Herridge<br>**Subject:** follow up - Fox Query/new information on timing, participants | *Personal Information Considered By Reporter Concerning Third Party That Was Not Reported* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002563 | 11/26/17 | **To:** SpecialCounselPress<br>**From:** Scott Stedman<br>**Subject:** Request for Comment | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002563 | 11/26/17 | **To:** SpecialCounselPress<br>**From:** Scott Stedman<br>**Subject:** Request for Comment | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002564 | 11/22/17 | **To:** PAC<br>**From:** Elizabeth Prelogar<br>**Subject:** Marie Claire | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002565 | 11/22/17 | **To:** Elizabeth Prelogar<br>**From:** [b(6)]<br>**Subject:** Marie Claire | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-002843;<br>20181087-002940;<br>20181087-005432;<br>20181087-005433 | 12/3/17 | **To:** SpecialCounselPress<br>**From:** Aruna Viswanatha<br>**Subject:** Andrew Weissman | *Information Identifying Individuals Not Officially Confirmed to be with SCO* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-002843; 20181087-002940; 20181087-005432; 20181087-005433 | 12/3/17 | **To:** SpecialCounselPress **From:** Aruna Viswanatha **Subject:** Andrew Weissman | *Information Identifying Third Party Not Confirmed to be with SCO* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-003017; 20181087-005557 | 12/11/17 | **To:** Peter Carr **From:** Garrett M. Graff **Subject:** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003065 | 12/14/17 | **To:** SpecialCounselPress **From:** Kara, Scannell **Subject:** Political donations | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003068; 20181087-005726 | 12/14/17 | **To:** SpecialCounselPress **From:** Kara, Scannell **Subject:** Political donations | *Information Identifying and/or about a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003069 | 12/14/17 | **To:** Evan Perez **From:** SpecialCounselPress **Subject:** query from Evan | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003153 | 12/20/17 | **To:** Chris Strohm **From:** SpecialCounselPress **Subject:** Quick Question | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003153 | 12/20/17 | **To:** SpecialCounselPress **From:** Chris Strohm **Subject:** Quick Question | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003156 | 12/21/17 | **To:** Sarah N. Lynch **From:** SpecialCounselPress **Subject:** Seeking guidance | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003157 | 12/21/17 | **To:** SpecialCounselPress **From:** Andrew Egger **Subject:** special counsel team – general profile | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003185 | 12/22/17 | **To:** Wyn Hornbuckle **From:** SpecialCounselPress **Subject:** Hickey Call re FARA | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-003186;<br>20181087-005866;<br>20181087-005878 | 12/22/17 | **To:** Mark Hosenball<br>**From:** SpecialCounselPress<br>**Subject:** Gates fundraising | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-003195 | 12/26/17 | **To:** Mark Hosenball<br>**From:** SpecialCounselPress<br>**Subject:** Ike Kaveladze | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003256 | 12/30/17 | **To:** SpecialCounselPress<br>**From:** Andres Triay<br>**Subject:** George P | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003267 | 11/19 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003268;<br>20181087-003269 | 12/29 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003270 | 4/3 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003271 | 6/14 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003275 | 12/01 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003280 | 2/15 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003285 | ? | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003286;<br>20181087-003287 | 6/19 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003289 | 8/3 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003296 | 6/14 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003304 | | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-003309; 20181087-003310 | 9/14 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-003311 | 7/20 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003321; 20181087-003322 | 6/14 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003325 | 6/14 | **SCO text message** | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003374 | September 18-22, 2017 | **Weekly Press Report** | *Information Identifying Individuals Not Officially Confirmed to be with SCO* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003405 | November 13, 2017 | **Weekly Press Report** | *Information Identifying Individuals Not Officially Confirmed to be with SCO* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003411 | November 20, 2017 | **Weekly Press Report** | *Information Identifying a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003425 | December 4-8, 2017 | **Weekly Press Report** | *Information Identifying a Third Party or Third Parties* | Exemption 6: Personal Privacy | 1 (partial) |
| **November 1, 2018 Remediation Production** | | | | | |
| 20181087-003446; 20181087-003778 | 5/30/17 | **To:** Press **From:** Dan Boylan **Subject:** Seeking Peter Carr // Media inquiry | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003508 | 6/20/17 | **To:** Laura Jarrett **From:** Peter Carr **Subject:** Special counsel atty | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003539; 20181087-003847 | 6/22/17 | **To:** Del Wilber **From:** Peter Carr **Subject:** I asked the other day about staffing updates | *Information Identifying Individuals Not Officially Confirmed to be with SCO* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003568 | 8/4/17 | **To:** Peter Carr **From:** Tony Capra **Subject:** Grand Jury Clarification | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-003694 | 7/25/17 | **To:** Sarah Isgur Flores<br>**From:** gkant@wnd.com<br>**Subject:** Request for comment | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
|---|---|---|---|---|---|
| 20181087-003699 | 8/5/17 | **To:** Sarah Isgur Flores<br>**From:** Chris Wallace<br>**Subject:** any news? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003699 | 8/4/17 | **To:** Chris Wallace<br>**From:** Sarah Isgur Flores<br>**Subject:** any news? | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003936 | 6/16/17 | **To:** Peter Carr<br>**From:** Chris Strom<br>**Subject:** Quick question | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-003999 | 6/14/17 | **To:** Matt Apuzzo<br>**From:** Peter Carr<br>**Subject:** Can you call | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-004020 | 7/20/17 | **To:** Peter Nicholas<br>**From:** SpecialCounselPress<br>**Subject:** Query from the Wall Street Journal | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-004021 | 7/21/17 | **To:** Kelly Cohen<br>**From:** SpecialCounselPress<br>**Subject:** Confirm CNN story | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-004027 | 7/26/17 | **To:** Rowan Scarborough<br>**From:** SpecialCounselPress<br>**Subject:** Washington Times to Peter Carr | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-004030 | 7/27/17 | **To:** Kelly Cohen<br>**From:** SpecialCounselPress<br>**Subject:** update | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-004064 | 8/3/17 | **To:** SpecialCounselPress<br>**From:** Geneva Sands<br>**Subject:** ABC News - question | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-004069 | 8/3/17 | **To:** Jonathan Easley<br>**From:** SpecialCounselPress<br>**Subject:** WJS report | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |

| 20181087-004070 | 8/3/17 | **To:** Nick Tschida **From:** SpecialCounselPress **Subject:** Federal Yellow Book Information Request | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-004153 | 9/26/17 | **To:** PAC **From:** ZNA **Subject:** outreach from reporters | *Information Concerning Prior (pre-SCO) Contacts Between DOJ Officials and Reporters* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-004666 | 11/10/17 | **To:** SpecialCounselPress **From:** Josh Gerstein **Subject:** Sorry I missed your call | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-005479 | 12/10/17 | **To:** SpecialCounselPress **From:** John Loftus **Subject:** Media request | *Activities and Details of a Purely Personal Nature* | Exemption 6: Personal Privacy | 1 (partial) |
| 20181087-005620 | 12/6/17 | **To:** [b(6)] **From:** [b(6)] **Subject:** Press Contact | *Information Concerning Prior (pre-SCO) Contacts Between DOJ Officials and Reporters* | Exemption 6: Personal Privacy | 1 (partial) |

### C.  DOJ Office of Information Policy, Records Released-in-Part, Pursuant to Exemptions 6 and 7(C)

| Bates Numbers | Date | Record Sender/Recipient/Subject | Description of Withheld Material | Exemption(s) | Pages |
|---|---|---|---|---|---|
| 20181087-000731 | 7/11/17 | **To:** PAC **From**: [b(6), b(7)(C)] **Subject:** Fake news investigation | *Information Provided by a Member of the News Media that Sender Believed Could be Helpful to SCO's Investigation* | Exemptions 6, and 7(C) | 1 (partial) |

### D.  DOJ Office of Information Policy, Records Released-in-Part, Third Party Contact Information – Exemption 6 Withholdings:

#### September 4, 2018 Production

20181087-000001; 20181087-000002; 20181087-000006; 20181087-000007; 20181087-000068; 20181087-000072; 20181087-000078; 20181087-000079; 20181087-000080; 20181087-000082; 20181087-000083; 20181087-000085; 20181087-000086; 20181087-000089; 20181087-000090; 20181087-000095; 20181087-000106; 20181087-000108; 20181087-000109; 20181087-000113; 20181087-000115; 20181087-000116; 20181087-000120; 20181087-000122; 20181087-000125; 20181087-000127; 20181087-000144; 20181087-000149; 20181087-000155; 20181087-000156; 20181087-000163; 20181087-000167; 20181087-000168; 20181087-000169; 20181087-000174; 20181087-000182; 20181087-000196; 20181087-000198; 20181087-000199; 20181087-000204; 20181087-000207; 20181087-000225; 20181087-000229; 20181087-000230; 20181087-000231; 20181087-000232; 20181087-000233; 20181087-000234; 20181087-000236; 20181087-000241; 20181087-000243; 20181087-000263; 20181087-000287; 20181087-000302; 20181087-000306; 20181087-000315; 20181087-000324; 20181087-000329; 20181087-000334; 20181087-000337;

20181087-000339; 20181087-000340; 20181087-000344; 20181087-000345; 20181087-000346; 20181087-000352; 20181087-000353; 20181087-000355; 20181087-000364; 20181087-000367; 20181087-000368; 20181087-000369; 20181087-000370; 20181087-000372; 20181087-000374; 20181087-000376; 20181087-000378; 20181087-000379; 20181087-000382; 20181087-000384; 20181087-000389; 20181087-000393; 20181087-000394; 20181087-000396; 20181087-000401; 20181087-000403; 20181087-000405; 20181087-000410; 20181087-000414; 20181087-000415; 20181087-000416; 20181087-000417; 20181087-000418; 20181087-000419; 20181087-000420; 20181087-000421; 20181087-000422; 20181087-000423; 20181087-000424; 20181087-000425; 20181087-000427; 20181087-000428; 20181087-000430; 20181087-000441; 20181087-000442; 20181087-000443; 20181087-000446; 20181087-000447; 20181087-000450; 20181087-000453; 20181087-000454; 20181087-000455; 20181087-000457; 20181087-000458; 20181087-000497; 20181087-000499; 20181087-000502; 20181087-000676; 20181087-000677; 20181087-000681; 20181087-000684; 20181087-000686; 20181087-000688; 20181087-000689; 20181087-000690; 20181087-000691; 20181087-000692; 20181087-000698; 20181087-000699; 20181087-000701; 20181087-000705; 20181087-000706; 20181087-000708; 20181087-000710; 20181087-000715; 20181087-000716; 20181087-000717; 20181087-000720; 20181087-000721; 20181087-000723; 20181087-000725; 20181087-000727; 20181087-000730; 20181087-000733; 20181087-000735; 20181087-000736; 20181087-000737; 20181087-000739; 20181087-000740; 20181087-000744; 20181087-000745; 20181087-000746; 20181087-000749; 20181087-000752; 20181087-000753; 20181087-000754; 20181087-000756; 20181087-000758; 20181087-000760; 20181087-000763; 20181087-000766; 20181087-000767; 20181087-000772; 20181087-000775; 20181087-000776; 20181087-000779; 20181087-000783; 20181087-000784; 20181087-000785; 20181087-000787; 20181087-000791; 20181087-000792; 20181087-000793; 20181087-000794; 20181087-000796; 20181087-000797; 20181087-000798; 20181087-000799; 20181087-000800; 20181087-000801; 20181087-000802; 20181087-000803; 20181087-000804; 20181087-000807; 20181087-000809; 20181087-000810; 20181087-000815; 20181087-000817; 20181087-000820; 20181087-000821; 20181087-000822; 20181087-000823; 20181087-000829; 20181087-000840; 20181087-000841; 20181087-000842; 20181087-000845; 20181087-000858; 20181087-000859; 20181087-000862; 20181087-000865; 20181087-000867; 20181087-000871; 20181087-000878; 20181087-000880; 20181087-000883; 20181087-000902; 20181087-000905; 20181087-000907; 20181087-000909; 20181087-000910; 20181087-000913; 20181087-000914; 20181087-000915; 20181087-000917; 20181087-000918; 20181087-000919; 20181087-000920; 20181087-000922; 20181087-000923; 20181087-000924; 20181087-000925; 20181087-000932; 20181087-000934; 20181087-000935; 20181087-000939; 20181087-000941; 20181087-000942; 20181087-000944; 20181087-000945; 20181087-000951; 20181087-000954; 20181087-000955; 20181087-000965; 20181087-000973; 20181087-000977; 20181087-000978; 20181087-000979; 20181087-000985; 20181087-000987; 20181087-000988; 20181087-000989; 20181087-000990; 20181087-000991; 20181087-000996; 20181087-001000; 20181087-001001; 20181087-001003; 20181087-001005; 20181087-001008; 20181087-001016; 20181087-001017; 20181087-001023; 20181087-001024; 20181087-001026; 20181087-001027; 20181087-001031; 20181087-001036; 20181087-001037; 20181087-001038; 20181087-001041; 20181087-001042; 20181087-001045; 20181087-001047; 20181087-001048; 20181087-001055; 20181087-001062; 20181087-001065; 20181087-001066; 20181087-001072; 20181087-001073; 20181087-001074; 20181087-001076; 20181087-001077; 20181087-001080; 20181087-001081; 20181087-001082; 20181087-001083; 20181087-001084; 20181087-001088; 20181087-001089; 20181087-001091; 20181087-001101; 20181087-001102; 20181087-001103; 20181087-001114; 20181087-001118; 20181087-001119; 20181087-001122; 20181087-001127; 20181087-001129; 20181087-001134; 20181087-001135; 20181087-001144; 20181087-001154; 20181087-001155; 20181087-001159; 20181087-001162; 20181087-001163; 20181087-001166; 20181087-001170; 20181087-001171; 20181087-001172; 20181087-001184; 20181087-001185; 20181087-001186; 20181087-001189; 20181087-001190; 20181087-001192; 20181087-001193; 20181087-001196; 20181087-001198; 20181087-001200; 20181087-001201; 20181087-001223; 20181087-001224; 20181087-001229; 20181087-001230; 20181087-001231; 20181087-001232; 20181087-001233; 20181087-001243; 20181087-001244; 20181087-001245; 20181087-001246; 20181087-001247; 20181087-001250; 20181087-001251; 20181087-001252; 20181087-001253;

20181087-001254; 20181087-001256; 20181087-001257; 20181087-001258; 20181087-001259; 20181087-001260; 20181087-001271; 20181087-001272; 20181087-001274; 20181087-001275; 20181087-001278; 20181087-001286; 20181087-001288; 20181087-001300; 20181087-001301; 20181087-001303; 20181087-001304; 20181087-001306; 20181087-001310; 20181087-001317; 20181087-001330; 20181087-001335; 20181087-001340; 20181087-001344; 20181087-001356; 20181087-001380; 20181087-001383; 20181087-001386; 20181087-001389; 20181087-001390; 20181087-001391; 20181087-001397; 20181087-001398; 20181087-001399; 20181087-001400; 20181087-001413; 20181087-001420; 20181087-001421; 20181087-001428; 20181087-001431; 20181087-001432; 20181087-001433; 20181087-001435; 20181087-001436; 20181087-001459; 20181087-001463; 20181087-001464; 20181087-001465; 20181087-001467; 20181087-001469; 20181087-001470; 20181087-001471; 20181087-001472; 20181087-001474; 20181087-001481; 20181087-001496; 20181087-001497; 20181087-001498; 20181087-001499; 20181087-001500; 20181087-001501; 20181087-001506; 20181087-001508; 20181087-001512; 20181087-001514; 20181087-001542; 20181087-001554; 20181087-001558; 20181087-001559; 20181087-001560; 20181087-001569; 20181087-001579; 20181087-001580; 20181087-001581; 20181087-001584; 20181087-001585; 20181087-001586; 20181087-001588; 20181087-001591; 20181087-001593; 20181087-001599; 20181087-001600; 20181087-001607; 20181087-001608; 20181087-001610; 20181087-001611; 20181087-001626; 20181087-001629; 20181087-001633; 20181087-001634; 20181087-001636; 20181087-001638; 20181087-001639; 20181087-001640; 20181087-001641; 20181087-001651; 20181087-001665; 20181087-001669; 20181087-001670; 20181087-001671; 20181087-001672; 20181087-001674; 20181087-001677; 20181087-001680; 20181087-001681; 20181087-001684; 20181087-001685; 20181087-001716; 20181087-001717; 20181087-001718; 20181087-001719; 20181087-001720; 20181087-001722; 20181087-001723; 20181087-001724; 20181087-001725; 20181087-001730; 20181087-001734; 20181087-001735; 20181087-001736; 20181087-001740; 20181087-001742; 20181087-001749; 20181087-001750; 20181087-001752; 20181087-001753; 20181087-001754; 20181087-001755; 20181087-001758; 20181087-001763; 20181087-001764; 20181087-001769; 20181087-001779; 20181087-001783; 20181087-001784; 20181087-001785; 20181087-001786; 20181087-001787; 20181087-001791; 20181087-001792; 20181087-001793; 20181087-001794; 20181087-001796; 20181087-001798; 20181087-001802; 20181087-001804; 20181087-001805; 20181087-001806; 20181087-001814; 20181087-001818; 20181087-001819; 20181087-001821; 20181087-001823; 20181087-001824; 20181087-001826; 20181087-001827; 20181087-001828; 20181087-001842; 20181087-001844; 20181087-001849; 20181087-001851; 20181087-001852; 20181087-001853; 20181087-001854; 20181087-001857; 20181087-001858; 20181087-001859; 20181087-001861; 20181087-001865; 20181087-001876; 20181087-001877; 20181087-001887; 20181087-001889; 20181087-001890; 20181087-001903; 20181087-001905; 20181087-001906; 20181087-001907; 20181087-001909; 20181087-001910; 20181087-001911; 20181087-001914; 20181087-001925; 20181087-001926; 20181087-001929; 20181087-001930; 20181087-001931; 20181087-001940; 20181087-001950; 20181087-001951; 20181087-001958; 20181087-001964; 20181087-001966; 20181087-001968; 20181087-001969; 20181087-001972; 20181087-001974; 20181087-001976; 20181087-001983; 20181087-001985; 20181087-001988; 20181087-001990; 20181087-001991; 20181087-001994; 20181087-001995; 20181087-001998; 20181087-001999; 20181087-002000; 20181087-002001; 20181087-002004; 20181087-002009; 20181087-002010; 20181087-002011; 20181087-002012; 20181087-002017; 20181087-002019; 20181087-002020; 20181087-002021; 20181087-002022; 20181087-002023; 20181087-002025; 20181087-002031; 20181087-002032; 20181087-002034; 20181087-002035; 20181087-002037; 20181087-002041; 20181087-002042; 20181087-002045; 20181087-002047; 20181087-002050; 20181087-002052; 20181087-002053; 20181087-002054; 20181087-002055; 20181087-002056; 20181087-002057; 20181087-002060; 20181087-002061; 20181087-002067; 20181087-002071; 20181087-002072; 20181087-002074; 20181087-002075; 20181087-002076; 20181087-002078; 20181087-002080; 20181087-002081; 20181087-002082; 20181087-002084; 20181087-002085; 20181087-002087; 20181087-002091; 20181087-002095; 20181087-002096; 20181087-002099; 20181087-002100; 20181087-002102; 20181087-002106; 20181087-002107; 20181087-002108; 20181087-002109; 20181087-002110; 20181087-002112; 20181087-002115; 20181087-002116; 20181087-002119; 20181087-002120; 20181087-002124; 20181087-002128;

20181087-002145; 20181087-002146; 20181087-002148; 20181087-002151; 20181087-002158; 20181087-002159; 20181087-002160; 20181087-002161; 20181087-002162; 20181087-002166; 20181087-002167; 20181087-002168; 20181087-002173; 20181087-002175; 20181087-002176; 20181087-002177; 20181087-002178; 20181087-002179; 20181087-002180; 20181087-002186; 20181087-002192; 20181087-002197; 20181087-002199; 20181087-002201; 20181087-002216; 20181087-002217; 20181087-002221; 20181087-002222; 20181087-002223; 20181087-002283; 20181087-002286; 20181087-002287; 20181087-002290; 20181087-002292; 20181087-002293; 20181087-002294; 20181087-002296; 20181087-002297; 20181087-002298; 20181087-002300; 20181087-002301; 20181087-002303; 20181087-002304; 20181087-002306;  20181087-002307; 20181087-002310; 20181087-002311; 20181087-002312; 20181087-002314; 20181087-002315; 20181087-002319; 20181087-002321; 20181087-002329; 20181087-002334; 20181087-002335; 20181087-002339; 20181087-002341; 20181087-002352; 20181087-002353; 20181087-002354; 20181087-002355; 20181087-002359; 20181087-002364;  20181087-002373; 20181087-002375; 20181087-002377; 20181087-002410; 20181087-002411; 20181087-002414; 20181087-002415; 20181087-002416; 20181087-002417; 20181087-002418; 20181087-002419; 20181087-002420; 20181087-002424; 20181087-002427; 20181087-002428; 20181087-002429; 20181087-002438; 20181087-002443; 20181087-002446; 20181087-002447; 20181087-002448; 20181087-002451; 20181087-002456; 20181087-002459; 20181087-002460; 20181087-002461; 20181087-002462; 20181087-002464; 20181087-002468; 20181087-002469; 20181087-002475; 20181087-002476; 20181087-002478; 20181087-002481; 20181087-002483; 20181087-002486; 20181087-002489; 20181087-002492; 20181087-002493; 20181087-002495; 20181087-002498; 20181087-002501; 20181087-002502; 20181087-002503; 20181087-002504; 20181087-002505; 20181087-002508; 20181087-002510;  20181087-002519; 20181087-002523; 20181087-002524; 20181087-002525; 20181087-002526; 20181087-002527; 20181087-002529; 20181087-002531;  20181087-002540; 20181087-002542; 20181087-002544; 20181087-002546; 20181087-002548; 20181087-002552; 20181087-002558; 20181087-002560; 20181087-002561; 20181087-002563; 20181087-002564; 20181087-002565; 20181087-002569; 20181087-002571; 20181087-002572; 20181087-002575; 20181087-002576; 20181087-002577; 20181087-002578; 20181087-002579; 20181087-002580; 20181087-002581; 20181087-002584; 20181087-002592; 20181087-002593; 20181087-002602; 20181087-002610; 20181087-002611; 20181087-002612; 20181087-002613; 20181087-002614; 20181087-002615; 20181087-002616; 20181087-002619; 20181087-002620; 20181087-002621; 20181087-002629; 20181087-002635; 20181087-002639; 20181087-002644; 20181087-002646; 20181087-002658; 20181087-002659; 20181087-002668; 20181087-002670; 20181087-002671; 20181087-002672; 20181087-002676; 0181087-002677; 20181087-002680; 20181087-002683; 20181087-002684; 20181087-002688; 20181087-002689; 20181087-002691; 20181087-002693; 20181087-002694; 20181087-002696; 20181087-002697; 20181087-002699; 20181087-002702; 20181087-002704; 20181087-002705; 20181087-002706; 20181087-002707; 20181087-002710; 20181087-002711; 20181087-002712; 20181087-002715; 20181087-002723; 20181087-002726; 20181087-002728; 20181087-002732; 20181087-002733; 20181087-002738; 20181087-002739; 20181087-002742; 20181087-002744; 20181087-002746; 20181087-002747; 20181087-002749; 20181087-002750; 20181087-002752; 20181087-002753; 20181087-002755;  20181087-002764; 20181087-002767; 20181087-002772; 20181087-002774; 20181087-002777; 20181087-002778; 20181087-002780; 20181087-002781; 20181087-002783; 20181087-002785; 20181087-002787; 20181087-002788; 20181087-002789; 20181087-002790; 20181087-002792; 20181087-002793; 20181087-002796; 20181087-002797; 20181087-002798; 20181087-002799; 20181087-002800; 20181087-002801; 20181087-002802; 20181087-002803; 20181087-002805; 20181087-002807; 20181087-002808; 20181087-002809; 20181087-002815; 20181087-002816; 20181087-002817; 20181087-002818; 20181087-002820; 20181087-002822; 20181087-002823; 20181087-002825; 20181087-002827; 20181087-002829; 20181087-002833; 20181087-002834; 20181087-002846; 20181087-002847; 20181087-002850; 20181087-002852; 20181087-002855; 20181087-002860; 20181087-002862; 20181087-002863; 20181087-002864; 20181087-002866; 20181087-002868; 20181087-002869; 20181087-002870; 20181087-002871; 20181087-002872; 20181087-002874; 20181087-002876; 20181087-002880; 20181087-002881; 20181087-002882; 20181087-002883; 20181087-002886; 20181087-002887; 20181087-002888; 20181087-002889; 20181087-002894;

20181087-002901; 20181087-002902; 20181087-002903; 20181087-002904; 20181087-002912; 20181087-002913; 20181087-002914; 20181087-002915; 20181087-002916; 20181087-002917; 20181087-002922; 20181087-002923; 20181087-002924; 20181087-002925; 20181087-002926; 20181087-002928; 20181087-002946; 20181087-002948; 20181087-002950; 20181087-002951; 20181087-002952; 20181087-002953; 20181087-002998; 20181087-002999; 20181087-003001; 20181087-003002; 20181087-003004; 20181087-003005; 20181087-003006; 20181087-003007; 20181087-003008; 20181087-003012; 20181087-003013; 20181087-003014; 20181087-003017; 20181087-003018; 20181087-003019; 20181087-003025; 20181087-003069; 20181087-003071; 20181087-003073; 20181087-003074; 20181087-003076; 20181087-003077; 20181087-003079; 20181087-003081; 20181087-003082; 20181087-003084; 20181087-003086; 20181087-003087; 20181087-003088; 20181087-003089; 20181087-003092; 20181087-003093; 20181087-003095; 20181087-003096; 20181087-003097; 20181087-003102; 20181087-003104; 20181087-003105; 20181087-003106; 20181087-003115; 20181087-003116; 20181087-003119; 20181087-003120; 20181087-003121; 20181087-003122; 20181087-003123; 20181087-003124; 20181087-003126; 20181087-003127; 20181087-003128; 20181087-003129; 20181087-003130; 20181087-003131; 20181087-003132; 20181087-003133; 20181087-003147; 20181087-003148; 20181087-003149; 20181087-003150;; 20181087-003155; 20181087-003188; 20181087-003213; 20181087-003216; 20181087-003218; 20181087-003220; 20181087-003249; 20181087-003256; 20181087-003261; 20181087-003262; 20181087-003263; 20181087-003264; 20181087-003272; 20181087-003273; 20181087-003281; 20181087-003294; 20181087-003295; 20181087-003297; 20181087-003323; 20181087-003344; 20181087-003345; 20181087-003351; 20181087-003354; 20181087-003355; 20181087-003356; 20181087-003358; 20181087-003359; 20181087-003361; 20181087-003363; 20181087-003366; 20181087-003368; 20181087-003370; 20181087-003373; 20181087-003375; 20181087-003376; 20181087-003378; 20181087-003380; 20181087-003384; 20181087-003388; 20181087-003390; 20181087-003393; 20181087-003396; 20181087-003397; 20181087-003401; 20181087-003403; 20181087-003405; 20181087-003409; 20181087-003410; 20181087-003413; 20181087-003414; 20181087-003416; 20181087-003417; 20181087-003432; 20181087-003438

## November 1, 2018 Remediation Production

20181087-003446; 20181087-003447; 20181087-003448; 20181087-003452; 20181087-003454; 20181087-003455; 20181087-003457; 20181087-003460; 20181087-003462; 20181087-003463; 20181087-003464; 20181087-003466; 20181087-003467; 20181087-003472; 20181087-003476; 20181087-003477; 20181087-003478; 20181087-003479; 20181087-003480; 20181087-003483; 20181087-003486; 20181087-003487; 20181087-003488; 20181087-003494; 20181087-003534; 20181087-003535; 20181087-003538; 20181087-003542; 20181087-003551; 20181087-003552; 20181087-003554; 20181087-003555; 20181087-003556; 20181087-003558; 20181087-003559; 20181087-003560; 20181087-003563; 20181087-003567; 20181087-003571; 20181087-003573; 20181087-003585; 20181087-003586; 20181087-003587; 20181087-003588; 20181087-003589; 20181087-003591; 20181087-003597; 20181087-003598; 20181087-003601; 20181087-003608; 20181087-003609; 20181087-003611; 20181087-003614; 20181087-003615; 20181087-003616; 20181087-003617; 20181087-003618; 20181087-003619; 20181087-003620; 20181087-003621; 20181087-003632; 20181087-003633; 20181087-003637; 20181087-003638; 20181087-003639; 20181087-003641; 20181087-003645; 20181087-003649; 20181087-003650; 20181087-003656; 20181087-003675; 20181087-003680; 20181087-003681; 20181087-003685; 20181087-003693; 20181087-003697; 20181087-003701; 20181087-003709; 20181087-003714; 20181087-003716; 20181087-003717; 20181087-003718; 20181087-003719; 20181087-003721; 20181087-003726; 20181087-003728; 20181087-003744; 20181087-003748; 20181087-003750; 20181087-003751; 20181087-003756; 20181087-003759; 20181087-003760; 20181087-003761; 20181087-003763; 20181087-003772; 20181087-003773; 20181087-003775; 20181087-003776; 20181087-003778; 20181087-003779; 20181087-003780; 20181087-003782; 20181087-003784; 20181087-003786; 20181087-003798; 20181087-003799; 20181087-003805; 20181087-003806; 20181087-003819; 20181087-003821; 20181087-003833; 20181087-003835; 20181087-003836; 20181087-003838; 20181087-003839; 20181087-003840; 20181087-003843; 20181087-003846; 20181087-003850;

20181087-003852; 20181087-003854; 20181087-003855; 20181087-003857; 20181087-003860; 20181087-003861; 20181087-003862; 20181087-003863; 20181087-003889; 20181087-003891; 20181087-003892; 20181087-003911; 20181087-003913; 20181087-003915; 20181087-003918; 20181087-003920; 20181087-003935; 20181087-003939; 20181087-003940; 20181087-003944; 20181087-003945; 20181087-003946; 20181087-003947; 20181087-003948; 20181087-003950; 20181087-003951; 20181087-003953; 20181087-003954; 20181087-003956; 20181087-003957; 20181087-003958; 20181087-003964; 20181087-003966; 20181087-003967; 20181087-003971; 20181087-003972; 20181087-003974; 20181087-003977; 20181087-003985; 20181087-003986; 20181087-003988; 20181087-003993; 20181087-003994; 20181087-003995; 20181087-003998; 20181087-003999; 20181087-004000; 20181087-004001; 20181087-004002; 20181087-004004; 20181087-004005; 20181087-004008; 20181087-004018; 20181087-004021; 20181087-004025; 20181087-004026; 20181087-004027; 20181087-004028; 20181087-004029; 20181087-004030; 20181087-004031; 20181087-004032; 20181087-004033; 20181087-004034; 20181087-004039; 20181087-004045; 20181087-004046; 20181087-004047; 20181087-004048; 20181087-004049; 20181087-004050; 20181087-004054; 20181087-004056; 20181087-004057; 20181087-004058; 20181087-004061; 20181087-004064; 20181087-004065; 20181087-004066; 20181087-004069; 20181087-004072; 20181087-004075; 20181087-004076; 20181087-004077; 20181087-004080; 0181087-004081; 20181087-004083; 20181087-004084; 20181087-004087; 20181087-004090; 20181087-004091; 20181087-004092; 20181087-004095; 20181087-004096; 20181087-004099; 20181087-004101; 20181087-004102; 20181087-004109; 20181087-004113; 20181087-004114; 20181087-004118; 20181087-004119; 20181087-004125; 20181087-004126; 20181087-004128; 20181087-004129; 20181087-004130; 20181087-004133; 20181087-004134; 20181087-004135; 20181087-004138; 20181087-004139; 20181087-004140; 20181087-004142; 20181087-004143; 20181087-004145; 20181087-004150; 20181087-004151; 20181087-004154; 20181087-004157; 20181087-004173; 20181087-004177; 20181087-004179; 20181087-004190; 20181087-004192; 20181087-004208; 20181087-004209; 20181087-004213; 20181087-004226; 20181087-004227; 20181087-004228; 20181087-004231; 20181087-004232; 20181087-004233; 20181087-004234; 20181087-004236; 20181087-004237; 20181087-004238; 20181087-004241; 20181087-004245; 20181087-004258; 20181087-004262; 20181087-004264; 20181087-004268; 20181087-004269; 20181087-004275; 20181087-004280; 20181087-004283; 20181087-004284; 20181087-004285; 20181087-004286; 20181087-004288; 20181087-004289; 20181087-004293; 20181087-004294; 20181087-004296; 20181087-004297; 20181087-004298; 20181087-004301; 20181087-004303; 20181087-004304; 20181087-004307; 20181087-004308; 20181087-004309; 20181087-004318; 20181087-004321; 20181087-004322; 20181087-004325; 20181087-004328; 20181087-004329; 20181087-004330; 20181087-004332; 20181087-004345; 20181087-004348; 20181087-004352; 20181087-004353; 20181087-004354; 20181087-004355; 20181087-004357; 20181087-004358; 20181087-004362; 20181087-004364; 0181087-004403; 20181087-004404; 20181087-004406; 20181087-004423; 20181087-004424; 20181087-004427; 20181087-004428; 20181087-004429; 20181087-004431; 20181087-004439; 20181087-004440; 20181087-004441; 20181087-004442; 20181087-004443; 20181087-004462; 20181087-004464; 20181087-004466; 20181087-004469; 20181087-004470; 20181087-004479; 20181087-004488; 20181087-004490; 20181087-004491; 20181087-004492; 20181087-004493; 20181087-004513; 20181087-004514; 20181087-004515; 20181087-004516; 20181087-004537; 20181087-004544; 20181087-004553; 20181087-004555; 20181087-004561; 20181087-004562; 20181087-004565; 20181087-004571; 20181087-004577; 20181087-004609; 20181087-004650; 20181087-004651; 20181087-004652; 20181087-004654; 20181087-004655; 20181087-004666; 20181087-004669; 20181087-004676; 20181087-004690; 20181087-004694; 20181087-004695; 20181087-004702; 20181087-004720; 20181087-004728; 20181087-004730; 20181087-004731; 20181087-004732; 20181087-004735; 20181087-004736; 20181087-004746; 20181087-004759; 20181087-004760; 20181087-004777; 20181087-004805; 20181087-004809; 20181087-004812; 20181087-004814; 20181087-004816; 20181087-004817; 20181087-004832; 20181087-004843; 20181087-004844; 20181087-004852; 20181087-004883; 20181087-004884; 20181087-004896; 20181087-004897; 20181087-004898; 20181087-004899; 20181087-004900; 20181087-004901; 20181087-004902; 20181087-004918; 20181087-004919; 20181087-004938; 20181087-004949; 20181087-004961; 20181087-004963; 20181087-004964;

20181087-004973; 20181087-004974; 20181087-004975; 20181087-004978; 20181087-004987; 20181087-004993; 20181087-004995; 20181087-004996; 20181087-005004; 20181087-005006; 20181087-005011; 20181087-005016; 20181087-005017; 20181087-005022; 20181087-005026; 20181087-005029; 20181087-005030; 20181087-005031; 20181087-005044; 20181087-005045; 20181087-005047; 20181087-005049; 20181087-005052; 20181087-005064; 20181087-005066; 20181087-005067; 20181087-005068; 20181087-005070; 20181087-005071; 20181087-005072; 20181087-005075; 20181087-005076; 20181087-005077; 20181087-005079; 20181087-005080; 20181087-005081; 20181087-005087; 20181087-005088; 20181087-005089; 20181087-005096; 20181087-005100; 20181087-005102; 20181087-005103; 20181087-005104; 20181087-005105; 20181087-005145; 20181087-005166; 20181087-005167; 20181087-005168; 20181087-005169; 20181087-005194; 20181087-005195; 20181087-005197; 20181087-005198; 20181087-005199; 20181087-005201; 20181087-005205; 20181087-005206; 20181087-005207; 20181087-005211; 20181087-005212; 20181087-005214; 20181087-005215; 20181087-005217; 20181087-005218; 20181087-005220; 20181087-005221; 20181087-005222; 20181087-005223; 20181087-005225; 20181087-005226; 20181087-005228; 20181087-005229; 20181087-005235; 20181087-005236; 20181087-005241; 20181087-005243; 20181087-005244; 20181087-005262; 20181087-005264; 20181087-005271; 20181087-005272; 20181087-005292; 20181087-005293; 20181087-005294; 20181087-005300; 20181087-005301; 20181087-005309; 20181087-005327; 20181087-005361; 20181087-005362; 20181087-005375; 20181087-005380; 20181087-005385; 20181087-005398; 20181087-005407; 20181087-005424; 20181087-005425; 20181087-005426; 20181087-005429; 20181087-005439; 20181087-005441; 20181087-005444; 20181087-005447; 20181087-005449; 20181087-005459; 20181087-005460; 20181087-005462; 20181087-005464; 20181087-005475; 20181087-005476; 20181087-005479; 20181087-005480; 20181087-005481; 20181087-005482; 20181087-005522; 20181087-005523; 20181087-005556; 20181087-005557; 20181087-005558; 20181087-005559; 20181087-005560; 20181087-005571; 20181087-005573; 20181087-005622; 20181087-005644; 20181087-005649; 20181087-005650; 20181087-005696; 20181087-005698; 20181087-005707; 20181087-005708; 20181087-005709; 20181087-005710; 20181087-005711; 20181087-005712; 20181087-005723; 20181087-005727; 20181087-005734; 20181087-005743; 20181087-005748; 20181087-005749; 20181087-005758; 20181087-005759; 20181087-005760; 20181087-005761; 20181087-005762; 20181087-005763; 20181087-005764; 20181087-005765; 20181087-005766; 20181087-005767; 20181087-005774; 20181087-005775; 20181087-005776; 20181087-005777; 20181087-005783; 20181087-005792; 20181087-005793; 20181087-005814; 20181087-005820; 20181087-005821; 20181087-005827; 20181087-005860; 20181087-005868

**E.  DOJ Office of Information Policy, Records Released-in-Part, DOJ Employee Contact Information and Identities – Exemption 6 Withholdings:**

**September 4, 2018 Production**

20181087-000046; 20181087-000048—000049; 20181087-000053- 000054; 20181087-000057; 20181087-000062; 20181087-000065; 20181087-000068; 20181087-000070; 20181087-000072; 20181087-000075; 20181087-000077; 20181087-000078; 20181087-000080; 20181087-000081; 20181087-000082; 20181087-000083; 20181087-000087; 20181087-000088; 20181087-000089; 20181087-000090; 20181087-000091; 20181087-000093; 20181087-000094; 20181087-000097; 20181087-000098; 20181087-000099; 20181087-000100; 20181087-000106; 20181087-000107; 20181087-000108; 20181087-000109; 20181087-000110; 20181087-000111; 20181087-000112; 20181087-000113; 20181087-000114; 20181087-000115; 20181087-000117; 20181087-000120; 20181087-000122; 20181087-000124; 20181087-000126; 20181087-000131; 20181087-000132; 20181087-000134; 20181087-000135; 20181087-000137; 20181087-000141; 20181087-000142; 20181087-000143; 20181087-000144; 20181087-000147; 20181087-000148; 20181087-000150; 20181087-000158; 20181087-000159; 20181087-000161; 20181087-000164; 20181087-000165;

20181087-000166; 20181087-000168; 20181087-000171; 20181087-000174; 20181087-000180; 20181087-000185; 20181087-000190; 20181087-000191; 20181087-000193; 20181087-000194; 20181087-000195; 20181087-000200; 20181087-000201; 20181087-000203; 20181087-000205; 20181087-000208; 20181087-000216; 20181087-000219; 20181087-000221; 20181087-000223; 20181087-000224; 20181087-000229; 20181087-000230; 20181087-000232; 20181087-000233; 20181087-000235; 20181087-000237; 20181087-000241; 20181087-000242; 20181087-000302; 20181087-000305; 20181087-000308; 20181087-000324; 20181087-000333; 20181087-000334; 20181087-000335; 20181087-000337; 20181087-000340; 20181087-000343; 20181087-000348; 20181087-000371; 20181087-000372; 20181087-000681; 20181087-000697; 20181087-000792; 20181087-000807; 20181087-001019; 20181087-001049; 20181087-001078; 20181087-001219; 20181087-001221; 20181087-001249; 20181087-001339; 20181087-001382; 20181087-001436; 20181087-001439; 20181087-001440; 20181087-001441; 20181087-001448; 20181087-001449; 20181087-001458; 20181087-001611; 20181087-001628; 20181087-001636; 20181087-001661; 20181087-001673; 20181087-001685; 20181087-001686; 20181087-001742; 20181087-001748; 20181087-001784; 20181087-001785; 20181087-001800; 20181087-001813; 20181087-001864; 20181087-001901; 20181087-001902; 20181087-001956; 20181087-001967; 20181087-001980; 20181087-001993; 20181087-002315; 20181087-002362; 20181087-002463; 20181087-002473; 20181087-002479; 20181087-002490; 20181087-002508; 20181087-002529; 20181087-002564; 20181087-002565; 20181087-002586; 20181087-002606; 20181087-002670; 20181087-002712; 20181087-003026; 20181087-003027; 20181087-003028; 20181087-003032; 20181087-003034; 20181087-003038; 20181087-003041; 20181087-003042; 20181087-003043; 20181087-003052; 20181087-003053; 20181087-003054; 20181087-003056; 20181087-003057; 20181087-003063; 20181087-003065; 20181087-003092; 20181087-003093; 20181087-003141; 20181087-003151; 20181087-003185

**November 1, 2018 Remediation Production:**

20181087-003450; 20181087-003458; 20181087-003459; 20181087-003546; 20181087-003548; 20181087-003600; 20181087-003604; 20181087-003607; 20181087-003612; 20181087-003614; 20181087-003625; 20181087-003628; 20181087-003629; 20181087-003640; 20181087-003649; 20181087-003650; 20181087-003652; 20181087-003655; 20181087-003660; 20181087-003661; 20181087-003662; 20181087-003663; 20181087-003665; 20181087-003666; 20181087-003667; 20181087-003668; 20181087-003669; 20181087-003670; 20181087-003671; 20181087-003672; 20181087-003673; 20181087-003674; 20181087-003675; 20181087-003676; 20181087-003679; 20181087-003683; 20181087-003684; 20181087-003686; 20181087-003687; 20181087-003688; 20181087-003694; 20181087-003696; 20181087-003702; 20181087-003707; 20181087-003708; 20181087-003711; 20181087-003712; 20181087-003719; 20181087-003720; 20181087-003721; 20181087-003722; 20181087-003724; 20181087-003725; 20181087-003730; 20181087-003732; 20181087-003754; 20181087-003759; 20181087-003760; 20181087-003775; 20181087-003786; 20181087-003787; 20181087-003791; 20181087-003805; 20181087-003807; 20181087-003819; 20181087-003832; 20181087-003833; 20181087-003840; 20181087-003842; 20181087-003861; 20181087-003869; 20181087-003906; 20181087-003907; 20181087-003921; 20181087-003925; 20181087-003941; 20181087-003966; 20181087-003967; 20181087-003968; 20181087-004004; 20181087-004011; 20181087-004022; 20181087-004035; 20181087-004102; 20181087-004146; 20181087-004148; 20181087-004152; 20181087-004153; 20181087-004155; 20181087-004174; 20181087-004188; 20181087-004466; 20181087-004529; 20181087-004550; 20181087-004688; 20181087-004702; 20181087-004704; 20181087-004728; 20181087-004809; 20181087-004936; 20181087-004951; 20181087-005079; 20181087-005199; 20181087-005323; 20181087-005328; 20181087-005445; 20181087-005573; 20181087-005620; 20181087-005650; 20181087-005814; 20181087-005827; 20181087-005828; 20181087-005833

**F.  DOJ Office of Information Policy, Non-Responsive Record Markings:**

20181087-000077; 20181087-000157; 20181087-000163; 20181087-000220; 20181087-000246; 20181087-000248; 20181087-000250; 20181087-000251; 20181087-000252; 20181087-000253; 20181087-000254; 20181087-000256; 20181087-000257; 20181087-000259; 20181087-000260; 20181087-000261; 20181087-000262; 20181087-000263; 20181087-000265; 20181087-000266; 20181087-000267; 20181087-000268; 20181087-000270; 20181087-000271; 20181087-000272; 20181087-000273; 20181087-000274; 20181087-000275; 20181087-000276; 20181087-000279; 20181087-000281; 20181087-000283; 20181087-000284; 20181087-000285; 20181087-000286; 20181087-000288; 20181087-000291; 20181087-000293; 20181087-000294; 20181087-000332; 20181087-003327; 20181087-003729;

**G.  DOJ Office of Information Policy, Duplicative Record Markings:**

20181087-003519; 20181087-003531; 20181087-003546; 20181087-003625; 20181087-003648